1  ANNE WANG (CA BAR NO. 151000)
   awang@lewisroca.com
2  DREW WILSON (CA BAR NO. 283616)
   dwilson@lewisroca.com
3  LEWIS ROCA ROTHGERBER CHRISTIE LLP
   655 North Central Avenue, Suite 2300
4  Glendale, California 91203-1445
   Telephone: (626) 795-9900
5
   LANCE G. JOHNSON (Admitted Pro Hac Vice)
6  lance@lgjlegal.com
   JOHNSON LEGAL PLLC
7  12545 White Drive
   Fairfax, Virginia 22030-6413
8  Telephone: (202) 445-2000
   Facsimile: (888) 492-1303
9
   Attorneys for Defendant
10 CREATEDHAIR DESIGNS, LLC

11

12               UNITED STATES DISTRICT COURT

13               CENTRAL DISTRICT OF CALIFORNIA

14
   NG IMPORTS INC.,                    Case No.: 2:21-cv-08086-JAK-RAO
15
              Plaintiff,               **RESPONSIVE CLAIM
16                                      CONSTRUCTION BRIEF
   vs.                                  FOR DEFENDANT**
17
   CREATEDHAIR DESIGNS, LLC,
18
              Defendant.
19                                      **Hon. John A. Kronstadt**

20

21

22

23        Defendant, CreatedHair Designs ("CHD"), hereby responds to Plaintiff's

24 Opening Claim Construction Brief (Dkt 36).

25

26

27

28
                                 -1-
   117329396.7

NGI has not proposed a claim construction. Instead, it provides additional language that "merely provides helpful context" (NGI Brief at 4:24-26; 6:8-9; 7:14-15, and 22:8-11). Such context does not help to discern the scope of the claims so that infringement can be determined. That is, however, the specific purpose of a claim construction proceeding. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)("The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed."). NGI has failed to provide this Court with a basis to adopt NGI's context statements in lieu of an actual claim construction.

NGI has asserted that the prosecution histories support its proposed "context" language for the disputed claim term. (NGI Brief at 15-20.) NGI has not, however, proposed an actual claim construction that identifies the scope of the disputed claim language. The proposed language is only for "context" that does not actually define anything. (See, supra at 2-4.) The citations and arguments are, therefore, without merit if they were intended to identify an actual claim construction.

What NGI's proposed language does not answer, but CHD's proposed construction does, is whether (a) the "wig grip apparatus" also refers to the side bands and (b) where do those side bands terminate relative to the front edge of the mesh? These are the key issues for determining infringement:

| Disputed language: | "the wig grip apparatus terminates at the forward periphery" |
|---|---|
|  | |
| The Accused Product | |

117329396.7

1    If the side bands must extend to the front edge of the mesh element where

2    they meet, there is no infringement because the front and rear edges of the bands

3    ("securement members") in the Accused Product do not terminate at either the front

4    or rear edge of the mesh element.

5    If NGI's proposed "context" language is adopted, we still do not know the

6    scope of the claim language and whether (or how) infringement can be determined.

7    This is improper for a claim construction proceeding. *O2 Micro Int'l Ltd. v. Beyond*

8    *Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("In this case, the

9    'ordinary' meaning of a term does not resolve the parties' dispute, and claim

10    construction requires the court to determine what claim scope is appropriate in the

11    context of the patents-in-suit.").

12    Curiously, NGI does present a construction that seems to support CHD's

13    proposed construction in their brief at 5:27-6:2:

14        As delineated in limitation (c), the wig grip apparatus terminates at the
         forward periphery of the mesh element, having no portion of the
15        apparatus both forward of and spanning the periphery of the mesh
16        element.

17    Apart from the additional requirement for "spanning the periphery," this

18    language is almost identical to what CHD has proposed as a meaning:

19        The first securement member, second securement member, and mesh
         element all terminate at the forward periphery of the mesh element such
20        that the securement members may not extend beyond the forward
21        periphery of the mesh element.

22    NGI also suggests a second interpretation (NGI Brief at and 20:22-26) that

23    is not supported by the documented record. Namely, NGI asserts in its second

24    proposed construction that the disputed claim language is the same as the language

25    of the amendment that NGI proposed but that the examiner refused (NGI Brief at

26    20:22-26):

27        . . . namely, that "the wig grip apparatus lacks non-transparency beyond the
         forward periphery." Both the applicant and the Examiner understood this and
28        ultimately came to an agreement on how this same limitation ought to be

-3-

expressed, namely, that "the wig grip apparatus terminates at the forward periphery."

CHD submits that a fair reading of the final claim language and the examiner's comments in her 2nd interview summary (CHD Brief at 19) and Statement of Reasons for Allowance (CHD Brief at 20) do not reflect a conclusion that "the wig grip apparatus lacks non-transparency beyond the forward periphery" means the same thing as "the wig grip apparatus terminates at the forward periphery."

### The Examiner and NGI's Counsel Did Not Make a Mistake: The Chosen Language Was Intentional

Plaintiff seems to assert that the actual, key, language allowed by the examiner in the two asserted utility patents is based on a mistake in choosing language to identify which structure or structures was/were supposed to terminate "at the forward periphery" of the mesh element. (See NGI Brief at 19.) Let's look at this closely for a moment.

1.    The language of the claim requires that "the wig grip apparatus" is what terminates at the forward periphery of the mesh element, not just the mesh element. This "wig grip apparatus" is internally defined by the claim as "comprising" at least three parts: the first securement member, the second securement member, and the mesh element. This internal definition and specified termination relationship mean, as a matter of basic grammar [1], that all three of these elements terminate at the forward periphery of the mesh element.

2.    In her Statement of Reasons for Allowance, the examiner referred to both "the mesh element" and "the wig grip apparatus" in the same sentence but in markedly different ways:

---

[1] *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983) ("A claim must be read in accordance with the precepts of English grammar.")

-4-

117329396.7

"The claims in the instant application have not been rejected using prior art because no references, or reasonable combination thereof could be found which disclose or suggest, 'the mesh element includes a forward periphery extending from the first inboard portion to the second inboard portion; and the wig apparatus terminates at the forward periphery'. The closest prior art of record appears to be Walsh (US 5,265,280). Walsh discloses a facial screen having a mesh element (24) connected to portion (20); however, Walsh does not disclose the mesh element including a forward periphery and that the forward periphery of the mesh terminates the apparatus.[2]

The use of "the mesh element" in a different way than "the wig grip apparatus" is not a mistake by the examiner. The examiner used plain, easily understandable, grammatical language to convey her understanding that the "mesh element" is not the same as "the wig grip apparatus."

Curiously, the word "terminate" and the phrase "terminates at" do not appear anywhere in the written specification portion of the '159 or '477 patents. That word and phrase are only found in the claims, and they were introduced by an Examiner's Amendment following the 2nd interview (Dkt 35-3 at NGI0013; CHD Brief at 11; NGI Brief at 19). The specification thus provides no written guidance as to the meaning of this phrase. Only the drawings inform the meaning of the termination clause.

It is likely that the examiner and NGI's counsel used the junction points between the mesh and the side straps that are shown in the figures as support for the "terminates at" language. *See, In re Wolfensperger*, 302 F.2d 950,

---

[2] This is correct. The front edge of the transparent Walsh face screen ends in a cord. (See NGI Brief at 16.) The transparent part stops short of this cord by a distance so that the side bands extend beyond the front edge of the transparent portion and do not all terminate at the same place as that transparent portion. This is completely consistent with CHD's proposed construction. (See CHD Brief at 20.) NGI does not harmonize the examiner's chosen language with the claim context it now asserts.

955 (C.C.P.A. 1962)("The practical, legitimate enquiry in each case of this kind is what the drawing in fact discloses to one skilled in the art. Whatever it does disclose may be added to the specification in words without violation of the statute and rule which prohibit 'new matter,' . . . for the simple reason that what is originally disclosed cannot be 'new matter' within the meaning of this law."), *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 398 (Ct. Cl. 1967)("In those instances where a visual representation can flesh out words, drawings may be used in the same manner and with the same limitations as the specification."), and *TDM Am., LLC v. United States*, 85 Fed. Cl. 774, 788 (2009)("The Court may also use the drawings or figures included . . . to flesh out the words.").




FIG. 2

If the figures were the support for the "terminates at" language, CHD's proposed construction is the best statement of what the figures depict and what scope the claims would have. (CHD Brief at 1; NGI Brief at 4):

> The first securement member, second securement member, and mesh element all terminate at the forward periphery of the mesh element such that the securement members may not extend beyond the forward periphery of the mesh element.

**Claim 15 Does Not Contradict CHD's Proposed Construction**

NGI points to the language in claim 15 as some type of support for its position. (See NGI Brief at 7-9.) The terms used in this claim do not, however, show that CHD's construction is erroneous.

117329396.7

1    Claim 15 is an unasserted, independent claim with clauses that require both

2    forward periphery alignment and wig grip apparatus termination at the forward

3    periphery:

4

5    15. A wig grip apparatus for facilitating enhanced securement of a
     wig to the head of a wearer, the wig grip apparatus comprising:

6         a first securement member . . .;
          a second securement member . . . ; and

7         a mesh element being transparent and affixed to the first
     inboard portion and the second inboard portion;

8         wherein

9         (a)   the securement members each include a forward edge
     and an opposing rearward edge;

10        (b)   the mesh element includes a frontal segment having a
     forward periphery;

11        (c)   *the forward periphery is in alignment with the forward*

12   *edges*; . . . and

13        (k)   *the wig grip apparatus terminates at the forward*

14   *periphery*.

15   The specification uses the word "alignment" in the abstract, in the

16   specification's description of figure 1 (e.g., DKT 35-1 at 3:1 and 3:17), and in the

17   claims. As noted above, there is no written description or explanation of what

18   "terminates at" is intended to mean. We have only the figures as possible guidance.

19   Nothing indicates that these limitations are in conflict or render one meaningless in

20   light of CHD's proposed construction of the termination clause.

21   To support its arguments, though, NGI has had to rewrite CHD's proposed

22   construction to require an alignment of the forward edges of the mesh and adjacent

23   straps. By rewriting CHD's proposed construction, NGI creates an apparent

24   conflict within unasserted claim 15. (See NGI Brief at 8.) Such word play does not

25   properly address the claim construction issues and do not fairly address the

26   correctness of CHD's proposed construction. Pointedly, there is no requirement for

27   alignment in CHD's proposed construction.

28

117329396.7

**<u>CHD's Proposed Meaning is Consistent With Claim Differentiation</u>**

NGI also cites the doctrine of claim differentiation and the language in claim 5 to challenge the correctness of CHD's proposed construction. (See NGI Brief at 9-12.) A comparison the language in claim 1 with that of claim 5 shows that claim 5 is of a different scope such that CHD's proposed construction of claim 1 does not render claim 5 redundant.

The "doctrine of claim differentiation" is based on the notion that an independent claim is broader than a claim that depends therefrom. A claim construction that would render the dependent claim of no scope is generally disfavored.  *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022).

The presumption of differentiation in claim scope is not, however, a hard and fast rule. It cannot be used to broaden the claims improperly. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001)("However, claim differentiation is not a hard and fast rule of construction, and cannot be relied upon to broaden claims beyond their correct scope.").

Like every case of claim construction, one must look at the claim as a whole rather than its component parts. *Sound View Innovations, LLC v. Hulu, LLC*, 33 F.4th 1326, 1333 (Fed. Cir. 2022)("Proper claim construction demands interpretation of the entire claim in context, not a single element in isolation.).

NGI improperly focuses its claim differentiation arguments on an isolated element in claim 5 rather than comparing the entireties of these claims. (See NGI Brief at 7-12.)

When properly considered as a whole, claim 5 requires that the mesh element have a "frontal segment having the forward periphery" where claim 1 does not. This structural limitation serves to narrow claim 5 relative to claim 1.

5. A wig grip apparatus as defined in claim 1 wherein
(a)   the securement members each include a forward edge and an opposing rearward edge;

-8-

117329396.7

(b)   the mesh element **includes a frontal segment** having the
forward periphery; and
(c)   the forward periphery is in alignment with the forward edges.

The frontal segment (130) is described in the specification as a different structure than the "forward periphery" (132) of the mesh element. See '159 at 2:65-3:1:

> The mesh element 120 may include a <u>frontal segment 130</u> having a forward periphery 132, and the forward periphery 132 may preferably be in alignment with the forward edges 126.



FIG. 1

The difference in scope between claims 1 and 5 mean that CHD's proposed construction does not violate the principles of claim differentiation.

**<u>Conclusion</u>**

CHD has proposed the only construction of the disputed claim language that is consistent with the intrinsic evidence:

(a) the grammatical structure and actual language of the claims,

(b) the support found in the disclosure as a whole, and

(c) the events recorded in the prosecution history.

Most importantly, CHD's proposed construction is the only one that actually construes the disputed claim language and identifies an applicable claim scope.

-9-

1
2

CHD's proposed construction is the correct one and should be adopted:

3
4

Disputed Claim Phrase       ". . . the wig grip apparatus terminates at the
                            forward periphery"

5
6
7
8
9
10

CHD's Proposed              "The first securement member, second
Construction                securement member, and mesh element all
                            terminate at the forward periphery of the mesh
                            element such that the securement members may
                            not extend beyond the forward periphery of the
                            mesh element."

11
12

Dated:  June 13, 2022                     Respectfully submitted,
                                          JOHNSON LEGAL PLLC

13
14

                                          By    /s/Drew Wilson
                                          Lance G. Johnson
                                          Drew Wilson

15

                                          Attorneys for Defendant
                                          CREATED HAIR DESIGNS, LLC

16
17
18
19
20
21
22
23
24
25
26
27
28

117329396.7