UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) ORDER REGARDING CLAIM CONSTRUCTION

### I.  Introduction

On October 11, 2021, NG Imports, Inc. brought this action against Createdhair Designs, LLC, alleging that it infringes, among others, U.S. Patent Nos. 10,881,159 (the "'159 Patent") and 10,945,477 (the "'477 Patent"). Dkt. 1 at 4–6. This Order addresses the parties' claim construction disputes concerning one claim term that appears in both the '159 and the '477 Patents.

On May 16, 2022, the parties filed a Joint Claim Construction Statement. Dkt. 34. They then filed their respective opening and responsive claim construction briefs. *See* Dkts. 35, 36, 37, 38. Based on a review of the filings, it was determined that the issues presented are appropriate for decision without oral argument, the hearing was taken off the July 25, 2022 calendar, and the matter was taken under submission. Dkts. 30, 47. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

The disputed claim term is construed in this Order.

### II.  Background

####   A.  Patents-in-Suit

The '159 Patent, which issued on January 5, 2021, is titled "Wig Grip Apparatus." Dkt. 35-1. It claims priority to U.S. Patent App. No. 16/819,024, which was filed on March 13, 2020, and published as U.S. Patent App. Pub. No. 2020/0214379. Plaintiff is the assignee of the '159 Patent.

The '477 Patent, which issued on March 16, 2021, is titled "Wig Grip Apparatus." Dkt. 35-2. It claims priority to U.S. Patent App. No. 16/276,579, which was filed on February 14, 2019, and published as U.S. Patent App. Pub. No. 2020/0015532. Plaintiff is the assignee of the '477 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

The '159 Patent and the '477 Patent (the "asserted patents") are related under 35 U.S.C. §120 because the '159 Patent is a divisional patent of the '477 Patent. Dkt. 35 at 3. The asserted patents relate to "devices for facilitating the stable attachment of wigs to the head of a wearer" and are directed to "embodiments of a wig grip apparatus." '159 Patent at 1:6–8; 2:13–16. The claims of the '159 Patent are directed to the wig band itself, and the claims of the '477 Patent are directed to a method of using the wig band to hold a wig on the head of a user. Dkt. 35 at 3.

According to the specification, the wig grip apparatus comprises at least a first securement member, a second securement member, and a transparent mesh element. '159 Patent at 2:16–19; 2:31–33. Specifically, the first and second securement member each may be comprised of a flexible fabric, have an outboard portion and an inboard portion, and have varying length. *Id*. at 2:20–30. The transparent mesh element may be affixed to the first and second inboard portion. *Id*. at 2:31–43. The securement members may each include a forward edge and an opposing rearward edge. *Id*. at 2:63–65. The mesh element may include a frontal segment having a forward periphery, which may preferably be in alignment with the forward edges. *Id*. at 2:65–3:1. For example, Figure 1 depicts a "diagrammatic bottom plan view of the one example wig grip apparatus in accordance with the present disclosure:"



*See id.*, Fig. 1.

Plaintiff alleges that Defendant has infringed Claims 1, 2, 10, 11, 14, 20 and 21 of the '159 Patent. Dkt. 34 at 1–2. Claim 1 recites:

1. A wig grip apparatus for facilitating enhanced securement of a wig to the head of a wearer, the wig grip apparatus comprising:
a first securement member comprised of velvet or velour and having a first outboard portion and a first inboard portion disposed oppositely of one another;
a second securement member comprised of velvet or velour and having a second outboard portion and a second inboard portion disposed oppositely of one another ; and;
a mesh element being transparent and affixed between the first inboard portion and the second inboard portion;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

> wherein the first outboard portion and second outboard portion are configured to be placed into releasable gripping engagement with one another, and
> wherein
> (a) the first securement member, the second securement member and the mesh element collectively form a band configured to encircle a head of a wearer when the first outboard portion and second outboard portion are in said releasable gripping engagement with one another;
> (b) the mesh element includes a forward periphery extending from the first inboard portion to the second inboard portion; and
> (c) ***the wig grip apparatus terminates at the forward periphery***.

'159 Patent, Claim 1 (emphasis added to show disputed claim limitation).

Claims 2, 10, 11 and 14 depend directly or indirectly on Claim 1, and they add limitations such as having the mesh element affixed to the inboard portions by stitching, adhesive or both (Claim 2); a complementary fastener as the releasable gripping engagement on the outboard portions (Claim 10); using hook-and-loop fasteners as the complementary fasteners (Claim 11); and having opaque securement members (Claim 14).

> Claim 20 discloses:
>
> 20.  A wig grip apparatus for facilitating enhanced securement of a wig to the head of a wearer, the wig grip apparatus comprising:
> a first securement member comprised of velvet or velour and having a first outboard portion and a first inboard portion disposed oppositely of one another;
> a second securement member comprised of velvet or velour and having a second outboard portion and a second inboard portion disposed oppositely of one another ; and;
> a mesh element being transparent and affixed between the first inboard portion and the second inboard portion;
> wherein the first outboard portion and second outboard portion are configured to be placed into releasable gripping engagement with one another, and
> wherein
> (a) the first securement member, the second securement member and the mesh element collectively form a band configured to encircle a head of a wearer;
> (b) the mesh element includes a forward periphery extending from the first inboard portion to the second inboard portion; and
> (c) ***the wig grip apparatus terminates at the forward periphery***.

'159 Patent, Claim 20 (emphasis added to show disputed claim limitation).

Claim 21 depends on Claim 20 and discloses the inboard portions separated from one another by the mesh element. *See id.*, Claim 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

Plaintiff also alleges that Defendant has infringed Claims 1 and 2 of the '477 Patent. Dkt. 34 at 2. Claim 1 recites:

    1.    A method of using a wig grip apparatus for facilitating enhanced securement of a hairpiece to the head of a wearer the method comprising:
providing a wig grip apparatus comprising;
(a) a first securement member comprised of a velvet or velour and having a first outboard portion and a first inboard portion disposed oppositely of one another;
(b) a second securement member comprised of a velvet or velour and having a second outboard portion and a second inboard portion disposed oppositely of one another; and
(c) a mesh element being transparent and affixed to the first inboard portion and the second inboard portion wherein the mesh element includes a forward periphery and ***the wig grip apparatus terminates at the forward periphery***.
securing the wig grip apparatus to the head of the wearer; and
applying a hairpiece having a foundation to the head, whereby the wig grip apparatus is disposed between the head and the foundation.

'477 Patent, Claim 1 (emphasis added to show disputed claim limitation). Claim 2 depends on Claim 1 and discloses that "the step of securing results in the wig grip apparatus encircling the head of the wearer." '477 Patent, Claim 2.

**III.**    <u>**Analysis**</u>

    A.    Legal Standards

Claim construction is the process of determining the meaning and scope of patent claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). It is a matter addressed by the court. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (internal citations and quotations omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id*. at 1314. "In such circumstances, general purpose dictionaries may be helpful. In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

"Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id*. (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id*.

Claim construction "begins and ends" with the words of the claims. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id*. In addition to the words of the claim(s) being construed, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id*. (citations omitted). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id*. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id*. at 1314–15. However, "[c]laim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (quoting *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967)).

"[C]laims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. To be a lexicographer, the inventor must "clearly express an intent to redefine the term." *Thorner v. Sony Computer Entertainment America, LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

as dispositive." *Phillips*, 415 F.3d at 1316. The inventor must demonstrate intent by "representing a clear disavowal of claim scope" in the specification. *Thorner*, 669 F.3d at 1366.

Despite the importance of a specification, limitations of the described embodiments of the invention must not be read into the claims. The Federal Circuit "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips* at 1323. Conversely, "an interpretation [that excludes a preferred embodiment] is rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics*, 90 F.3d at 1583. Overall, limitations from the specification should not be read into claims. *Thorner*, 669 F.3d at 1366–67.

The prosecution history is also relevant intrinsic evidence. "[T]he prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation" and for this reason "often lacks the clarity of the specification." *Phillips*, 415 F.3d at 1317. However, it can nonetheless "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [it has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman*, 52 F.3d at 980). The use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate construction. *Teva*, 574 U.S. at 326.

    B.    Claim Construction

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the wig grip apparatus terminates at the forward periphery" | "The wig grip apparatus terminates at various locations about its entire periphery; one such location at which the wig grip apparatus terminates is at the forward periphery of the mesh element." | "The first securement member, second securement member, and mesh element all terminate at the forward periphery of the mesh element such that the securement members may not extend beyond the forward periphery of the mesh element." |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

1. The Positions of the Parties

With respect to its proposed construction, Defendant argues the claim language "literally and grammatically" requires the entirety of the grip apparatus, including the forward edges of the securement members, to terminate at the "forward periphery" of the mesh element. Dkt. 35 at 17. Defendant argues that the specification and drawings in the '159 Patent support its proposed construction. Thus, it contends that they show the sides bands and mesh element "in alignment," or follow "a non-linear forward pathway." *Id.* at 17–18. Defendant also argues that the prosecution history supports its construction because the disputed term was added during amendment following two interviews with the examiner to avoid the Becker and Walsh prior art references. *Id.* at 19–20. Defendant argues that the examiner's statement of reasons for allowance supports its construction. *Id.* at 20. Finally, Defendant argues that, because Plaintiff initially asserted infringement only under the doctrine of equivalents but not literal infringement, Plaintiff's course of dealing supports Defendant's construction. *Id.* at 21.

With respect to its proposed construction, Plaintiff relies on the claim language. *First*, Plaintiff argues that Defendant's construction represents a physical impossibility and alters the meaning of the asserted claims because the wig grip apparatus, like all physical objects, terminates at various locations about its entire periphery. Dkt. 36 at 5–7. *Second*, it argues that, under Defendant's construction, Claim 15(k) of the '159 Patent would render Claim 15(c) redundant and superfluous. *Id.* at 7–9. *Third*, Plaintiff contends that if Defendant's construction is adopted, there would be no material difference between the disputed term in Claim 1 and Claim 5 of the '159 Patent. Therefore, Plaintiff argues that the doctrine of claim differentiation precludes Defendant's construction. *Id.* at 9–11. Furthermore, Plaintiff argues that the specification supports its construction. Figures 1 and 2 of the '159 Patent depict one possible embodiment of the wig grip apparatus. *Id.* at 13–14. Plaintiff adds that the goal of the claimed invention is to obscure the mesh element from view, so that "having a nontransparent structure forward of the forward periphery" would undermine this express purpose. *Id.* at 13.

Plaintiff also argues that the prosecution history supports its construction. *First*, the disputed term in the '159 Patent was added during amendment to distinguish the claimed invention from the Walsh reference, and the amendment intended to refer exclusively to the features of the mesh element. *Id.* at 15–19. *Second*, Plaintiff argues that nothing in Walsh requires the forward periphery of the mesh element to be in line with the forward edges of the securement members or restricts the securement members from extending beyond the forward periphery of the mesh element. From this it contends that all that was required to distinguish the claimed invention from Walsh was to specify that no non-transparent structure appears forward of the mesh element's forward periphery. *Id.* at 20. Further, Plaintiff argues that other proposed amendment language appearing in a draft, but not in the formal submission, is irrelevant to claim scope. *Id.* at 21–22.

Defendant replies that Plaintiff fails to provide a claim construction, but instead merely provides context that is not helpful to discern claim scope. Dkt. 37 at 1–3. Defendant argues that, because the "wig grip apparatus" comprises the securement members and the mesh element, and because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

the examiner referred to the "mesh element" and the "wig grip apparatus" differently within the same sentence, the "mesh element" is distinct from the "wig grip apparatus." *Id.* at 4–5. Defendant then argues that if the Figures provide support for the "terminates at" language, Defendant's construction is the one most consistent with the Figures. *Id.* at 5–6. Defendant adds that Claim 15 does not contradict its construction because Claims 15(c) and 15(k) require the forward periphery alignment and the wig grip apparatus termination at the forward periphery, respectively. *Id.* at 7. Finally, Defendant challenges Plaintiff's claim differentiation argument. Thus, it contends that, when considered as a whole, Claim 5 specifies that the mesh element includes "a frontal segment having the forward periphery," which provides a different scope between Claims 1 and 5. *Id.* at 8–9.

Plaintiff responds by reiterating that the claim language supports its construction. Dkt. 38 at 2. Plaintiff argues that Defendant fails to rebut the strong presumption of the doctrine of claim differentiation, and that Defendant's construction would result in no meaningful difference between dependent Claim 5 and independent Claim 1. *Id.* Plaintiff further argues that Defendant's contention, that all three elements of the wig apparatus, *i.e.*, two securement members and the mesh elements, terminate at the forward periphery, is misleading and illogical. *Id.* at 2–3. Plaintiff argues that the specification supports its construction because the embodiments represent an example, and do not limit or define the invention. *Id.* at 4. Plaintiff further argues that Defendant mischaracterizes the prosecution history and confuses dialogue between the applicant and examiner with estoppel. *Id.* at 4–9. Finally, Plaintiff argues that Defendant improperly relies on extrinsic evidence, *i.e.*, a letter from Plaintiff's prior counsel, as evidence for claim construction. *Id.* at 10.

      2.     Analysis

The parties dispute whether the first and second securement members may extend past the forward periphery of the mesh element. Although Plaintiff's proposed construction provides context for the relationship between these elements, it does not address claim scope. Dkt. 37 at 1–3. Defendant's construction adds unsupported limitations to the claims. Dkt. 36 at 7–9. Both proposed constructions overlook plain and ordinary meaning.

A review of the claim language, specification, and prosecution history demonstrates that "the wig grip apparatus terminates at the forward periphery" should be understood by its plain and ordinary meaning. According to the plain language of the claims, "the forward periphery" means the forward periphery of the mesh element. Thus, the plain and ordinary meaning of "the wig grip apparatus terminates at the forward periphery" is the forward periphery of the mesh element is the most forward portion of the wig grip apparatus. This determination is appropriate for several reasons.

*First*, the claim language confirms that plain and ordinary meaning applies. The wig apparatus is comprised of three elements: a first securement member, a second securement member, and a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

transparent mesh element. *See, e.g.,* '159 Patent Claim 1. Claim 1 specifies that "the mesh element includes a forward periphery" and "the wig grip apparatus terminates at the forward periphery." *Id.* Because the claim language requires the "wig grip apparatus" as a whole to terminate at "the forward periphery" of the mesh element, the plain and ordinary meaning of the claim language supports the inference that, for the same reasons, the forward ends of the adjacent securement members cannot extend beyond the forward periphery of the mesh element.

Defendant's proposed construction, that "the first securement member, second securement member, and mesh element all terminate at the forward periphery of the mesh element," implies something that is not physically possible. A proposed claim construction that appears illogical in view of the ordinary meaning of the claim term is rarely a proper construction. *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially nonsensical cannot be correct." (quotation and citation omitted)); *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1146–47 (Fed. Cir. 2004) (rejecting proposed nonsensical construction because it would have required component to exert downward force on itself). As Plaintiff observes, the wig grip apparatus as whole terminates about its entire periphery. Dkt. 36 at 5–6. The "forward periphery of the mesh element" referenced in the disputed claim limitation is one such location. It is not physically possible for the parts of the wig apparatus that are laterally disposed relative to the mesh element, *i.e.*, the first and second securement members, to terminate at the "frontal segment" of the mesh element.

The parties also dispute whether Defendant's proposed construction adds an alignment requirement between the forward edges of the mesh element and adjacent straps, under which claim element 15(k) would make element 15(c) superfluous. *See generally* '159 Patent at 5:44–45, 6:4–5; Dkt. 36 at 7–9; Dkt. 37 at 6–7. The doctrine of claim differentiation supports the construction that no alignment requirement should be read into the disputed term. A court applying claim differentiation may use a dependent claim to interpret an independent claim, and broadly construe an independent claim based on a dependent claim. *See AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) ("[u]nder the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend.").

Claim 5 recites that "the securement members each include a forward edge and an opposing rearward edge," "the mesh element includes a frontal segment having the forward periphery," and "the forward periphery is in alignment with the forward edges." '159 Patent at 4:51–57. As Plaintiff observes, dependent Claim 5 discloses alignment between the mesh element's forward periphery and the forward edge of the securement members, whereas independent Claims 1 and 21 do not. Dkt. 36 at 9–10. Accordingly, considering the claims as a whole, Claim 1 is construed broadly without requiring the alignment disclosed in dependent Claim 5.

*Second*, the specification supports the conclusion that "the wig apparatus terminates at the forward periphery" should be understood by its plain and ordinary meaning. The specification describes the purpose of the invention, the wig apparatus, the forward periphery, and what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

"terminates at" means with sufficient context that neither of the constructions proposed by the parties is necessary.

The background discloses a wig apparatus aimed at "preserving the appearance that the hair strands of the headpiece originate from the underlying scalp at the location of the front hairline and hair part of the hairpiece." '159 Patent at 1:21–25. The wig apparatus includes securement members and a transparent mesh element. *Id.* at 2:13–19. The securement members have forward and rearward edges, and the mesh element may have a frontal segment with a forward periphery. *Id.* at 2:63–66. The specification describes the transparent mesh material as "sheer" and "fine," with the "ability to lay flat against the scalp" while allowing for the "natural appearance and color of the wearer's scalp … to pass through." *Id.* at 1:12–15; 2:34–47; 3:60–67. In contrast, the specification describes the securement members as "comprised of flexible fabric" that "may be generally opaque and may comprise velvet or velour." *Id.* at 2:20–21; 3:27–31. Because the securement members may be opaque, extending them past the forward periphery of the mesh element would contradict the objective of the invention. As Plaintiff has argued, "having a nontransparent structure forward of the forward periphery" would undermine the goal of making the wig appear as natural as possible. Dkt. 36 at 13; *compare ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1320 (Fed. Cir. 2012) (claim construction invalid in part because it contradicted express purpose of invention).

Defendant argues that, because "terminates at" does not appear in the specification, there is insufficient guidance. Dkt. 37 at 5. This argument is unpersuasive. Absent an express intent to redefine a term in the specification, the term is understood by applying its plain and ordinary meaning. *See Thorner*, 669 F.3d at 1365–66. Here, the patentee expressed no intent to redefine "terminates at." In the context of the specification, which describes the "periphery" and "edges," this term may be understood by its plain and ordinary meaning, *i.e.*, the forward periphery of the mesh element is the most forward portion of the wig apparatus.

For similar reasons, the use of "alignment" in the Abstract and specification is not, as Defendant suggests, evidence that the mesh element and securement members must all terminate at the forward periphery. Dkt. 37 at 7. The specification teaches that the forward periphery of the mesh element and forward edges of the securement members "may preferably be in alignment" or "may collectively follow a non-linear forward pathway," with Figures 1 and 2 providing examples. '159 Patent at 2:63–3:5. That some embodiments require alignment of the securement members and the mesh element does not warrant importing this limitation into the claims. The specification states that the described embodiments are not meant to limit the invention. *Id.* at 4:8–11. If such alignment were required, then embodiments where the securement members are made of thicker material might contradict the goals of having the wig appear natural and "avoiding creating bulk that may appear unnatural near the front and/or parting line of the hairpiece." *Id.* at 4:2–3; *see ArcelorMittal France*, 700 F.3d at 1320; *Merck & Co.*, 347 F.3d at 1371 ("[C]laims must be construed so as to be consistent with the specification, of which they are a part."); *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Therefore, reading the disputed limitation in the context of the specification, "the wig apparatus terminates at the forward periphery" is easily understood by its plain and ordinary meaning.

*Third*, the prosecution history supports a plain and ordinary meaning that the mesh is the most forward part of the grip apparatus. On June 12, 2020, the patent examiner rejected the original claim language, which did not include the disputed limitation. Among other reasons, the patent examiner rejected Claims 21–22, under 35 U.S.C 102, as anticipated by Walsh, and Claims 1–5, 11–12, and 21–22, under U.S.C 103, as being unpatentable over Becker in view of other prior art. Dkt. 35-3 at 83–84, NGI00059–60. Before a telephonic interview with the examiner, applicant filed a phone interview agenda, which included draft "claims and claim amendments for discussion purposes only." *Id.* at 31, NGI00045.

During a telephonic interview, applicant's attorney and the examiner discussed the draft proposed amendment. Dkt. 36-1 at 92–94, NGI00041–43. Specifically, applicant's attorney addressed "the extension of the middle mesh section of the instant invention to the forward edge of the wig grip apparatus as a distinguishing feature" from Walsh and Becker. *Id.* at 94, NGI00043. Approximately two weeks later, applicant submitted claim amendments. *Id.* at 96–107, NGI00025–36. To distinguish further the claimed invention from Walsh and Becker, applicant added "the wig grip lacks non-transparency beyond the forward periphery" in Claims 1 and 21. *Id.* at 16, 20, NGI00026, 30. Applicant explained that, unlike "the elastic cording[s]" in Walsh that are "non-transparent structures present beyond the peripheries of the mesh," "including non-transparency beyond the forward periphery of the transparent mesh element would frustrate the purpose of the instant invention." *Id.* at 103–104, NGI00032–33. This supports the view that the applicant intended the amendment to describe the transparent mesh element portion of the wig grip apparatus, not the non-transparent securement members. Dkt. 36 at 18.

During prosecution, the PTO assigned Primary Examiner Rachel Steitz to examine the '159 Patent and '744 Patent. *Id.* at 109, NGI00016. On November 12, 2020, applicant and Steitz participated in an examiner-initiated interview. At that time Steitz "suggested changing the language of 'the wig grip apparatus lacks non-transparency beyond the forward periphery' since it was unclear as to what 'lacks non-transparency' is and it was also unclear as to what was considered 'beyond the forward periphery.'" *Id.* at 110, NGI00017. Applicant and Steitz "agreed to change the limitation to state 'the wig grip apparatus terminates at the forward periphery' to overcome the § 112 rejection [in light of Walsh] and to overcome the prior art of record and put the application in condition for allowance." *Id.*

When explaining the reasons for allowance, Steitz acknowledged that Walsh was the closest prior art of record. *Id.* at 113–114. NGI00013–14. Steitz also explained that, although Walsh discloses a facial screen having a mesh element connected to portions of the securement elements, it "does not disclose the mesh element including a forward periphery and that forward periphery of the mesh terminate the apparatus." *Id.* Steitz distinguished "the mesh" from "the apparatus" within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

same sentence, which supports the determination that the examiner understood that "the mesh element" is different from "the wig grip apparatus." Therefore, the prosecution history supports understanding the disputed term by its plain and ordinary meaning, *i.e.,* the mesh element is the most forward part of the grip apparatus, and the securement members may not extend beyond the forward periphery of the mesh.

In contrast, nothing in the prosecution history suggests that the forward periphery of the mesh element must align with the forward edge of the securement members. A "clear and unmistakable" disclaimer is required before treating an argument made by the applicant during prosecution that is not included in the claims as limiting claim scope. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325–26 (Fed. Cir. 2003); *see* also *Tech. Properties Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1357–58 (Fed. Cir. 2017) ("Prosecution disclaimer can arise from both claim amendments and arguments made to the PTO … If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established.").

Defendant's prosecution history estoppel argument is also unpersuasive. Dkt. 35 at 18–20. No "clear and unmistakable" disclaimer appears in the prosecution history. Although applicant's attorney suggested using "the extension of the mesh section … to the forward edge of the wig grip apparatus as a distinguishing feature" from Walsh and Becker, this statement was made during an interview. Dkt. 35-3 at 29, NGI00043; Dkt. 35 at 19. It does not "clearly and unmistakably" require alignment between the bands and the mesh. Instead, the examiner noted that "the shape of the center mesh section and the corresponding shapes of the inward portions of the securement members affixed to the mesh section [are] pertinent areas of detail to expand upon." Dkt. 35-3 at 29, NGI00043. Accordingly, the prosecution history does not require alignment of the securement members and the mesh.

Because intrinsic evidence resolves any ambiguity concerning the disputed limitation, it is unnecessary to rely on extrinsic evidence, including the letter from Plaintiff's prior counsel that did not assert literal infringement. Dkt. 35 at 21; *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.").

### III. Conclusion

For the reasons stated in this Order, the disputed term is construed as follows:

| Term | Construction |
|---|---|
| "the wig grip apparatus terminates at the forward periphery" (Claims 1 and 20 of the '159 Patent; Claim 1 of the '477 Patent) | Plain and ordinary meaning, i.e., "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus" |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086-JAK (RAOx) | Date | September 21, 2022 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

**IT IS SO ORDERED.**

                                                         :

Initials of Preparer   tj