ANNE WANG (CA BAR NO. 151000)
awang@lewisroca.com
DREW WILSON (CA BAR NO. 283616)
dwilson@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
655 North Central Avenue, Suite 2300
Glendale, California 91203-1445
Telephone: (626) 795-9900

LANCE G. JOHNSON (Admitted Pro Hac Vice)
lance@lgjlegal.com
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030-6413
Telephone: (202) 445-2000
Facsimile: (888) 492-1303

Attorneys for Defendants
CREATEDHAIR DESIGNS, LLC and
CREATED HAIR, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NG IMPORTS INC., | Case No.: 2:21-cv-08086-JAK-RAO |
| Plaintiff, | **RESPONSE IN OPPOSITION TO MOTION FOR RECONSIDERATION OF CLAIM INTERPRETATION** |
| vs. | |
| CREATEDHAIR DESIGNS, LLC, and CREATED HAIR, INC. | |
| Defendants. | **Hon. John A. Kronstadt** |

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| A.  | Requests for Reconsideration Are Disfavored and Limited .............. | 1 |
| B.  | There Was No Overlooked Fact in the Claim Construction Order ... | 3 |
| 1.  | There is No Identified Fact Showing Error ....................................... | 4 |
| 2.  | The Court Considered the Purpose of the Mesh Insert ...................... | 6 |
| 3.  | A Specification That is Neutral as to Mesh Position Does Not Demonstrate Error in the Claim Interpretation ................................. | 7 |
| 4.  | The Court Fully Understood the Prosecution History ....................... | 7 |
| 5.  | A Motion for Reconsideration Cannot Review the Merits of the Examiner's Section 112 Objection .................................................... | 8 |
| 6.  | NGI's Intentions for the Proposed, Rejected Pre-Interview Amendments Do Not Control the Interpretation of the Final, Further Amended Claim Language ................................................ | 9 |
| C.  | The Court Has Already Adopted a Construction that is Consistent with the Intrinsic Evidence ................................................................ | 10 |
| 1.  | Repeating Arguments for the Previously Proposed Context Construction is Not Helpful .............................................................. | 10 |
| 2.  | The Newly Proposed Constructions Add New Matter and Do Not Reflect the Language of the Patented Claims .................................. | 11 |
| D.  | Conclusion ........................................................................................ | 12 |

117329396.6

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*389 Orange St. Partners v. Arnold*,
  179 F.3d 656 (9th Cir. 1999) .................................................................................. 2

*Becton Dickinson and Co. v. C.R. Bard, Inc.*,
  922 F.2d 792 (Fed. Cir. 1990) ............................................................................... 12

*Camarillo v. City of Maywood*,
  No. 2:07-cv-03469-ODW(SHx), (C.D. Cal. Mar. 26, 2015) .............................. 2

*Festo Corp. v. Shoketsu Kinzoku Kogyokabushiki Co.*,
  535 U.S. 722 (2002) ........................................................................................ 8, 10

*Flores v. Lynch*,
  212 F. Supp. 3d 907 (C.D. Cal. 2015) .................................................................. 2

*GCP Applied Techs. Inc. v. AVM Indus., Inc.*,
  No. CV1907475MWFRAO, 2022 WL 4597418 (C.D. Cal. Aug. 5, 2022) ....................................................................................................................... 7

*Herzfeld v. Teva Pharm. U.S., Inc.*,
  No. 2:18-cv-09784-ODW .................................................................................... 3

*Inphi Corp. v. Netlist, Inc.*,
  805 F.3d 1350 (Fed. Cir. 2015) ........................................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ................................................................................. 2

*NG Imports v. Does 1-52*,
  No. 1:21-cv-06021 (N.D. Ill.) ............................................................................. 10

*Pegasus Satellite Television, Inc. v. DirecTV, Inc.*,
  318 F. Supp. 2d 968 (C.D. Cal. 2004) .................................................................. 3

*Santarus, Inc. v. Par Pharmaceuticals., Inc.*,
  694 F.3d 1344 (Fed. Cir. 2012) ........................................................................... 11

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
  8 F.4th 1285 (Fed. Cir. 2021) .............................................................................. 11

117329396.6

*Sound View Innovations, LLC v. Hulu, LLC*,
    No. LACV1704146JAKPLAX, 2020 WL 5356698 (C.D. Cal.
    June 18, 2020) ........................................................................................................ 2

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016) ............................................................................. 5

*Williams v. Gen. Surgical Innovations, Inc.*,
    60 F. App'x 284 (Fed. Cir. 2003) ........................................................................ 11

**Statutes**

35 U.S.C. §112 ................................................................................................*passim*

117329396.6

This responds to Plaintiff's motion for reconsideration (ECF 58) of this court's claim construction Order (ECF 55) that is based on the "plain and ordinary meaning" of the disputed claim phrase. Defendants CreatedHair Designs, LLC and Created Hair, Inc. (collectively, "CHD") oppose.

The court fully and properly considered all of the relevant claim language, prosecution history, and prior art issues raised in its Order and demonstrated its understanding of those issues by adopting a construction that exactly tracks the language of the claims. There is also no reason to entertain (again) the repetitive arguments presented in its brief or the two new claim interpretations that were not presented earlier and that do not track the actual claim language of the issued patents or prosecution history, but which would import new limitations into the claims that are unclear, inconsistent, and represent new matter in violation of the restriction of 35 U.S.C. §112.

**A.       Requests for Reconsideration Are Disfavored and Limited**

Requests for reconsideration of claim interpretation are based on C.D. Cal. L.R. 7-18 provides limited grounds for a request for reconsideration (emphasis supplied):

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a *manifest showing* of a failure to consider material facts presented to the Court before the Order was entered. *No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion*. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

-1-

This court has noted the very limited role for reconsideration requests for claim construction in *Sound View Innovations, LLC v. Hulu, LLC*, No. LACV1704146JAKPLAX, 2020 WL 5356698, at *2 (C.D. Cal. June 18, 2020) (citations omitted):

> "Reargument should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."

A motion for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citation omitted). Plaintiff, as movant, bears the burden of proving that reconsideration is proper. See *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (noting that it was the movant's burden "to establish that the district court committed clear error").

The "manifest showing" standard is hard to meet in a patent case when the court has been provided with the patent, its intrinsic evidence (i.e., the file history and cited references), in the context of briefing by both parties using the same set of documents. See, *Flores v. Lynch*, 212 F. Supp. 3d 907, 911 (C.D. Cal. 2015)("The Court had access to the entire record the parties presented. Ultimately, while Defendants may disagree with the court's application of the facts to the law, there is not a manifest showing of a failure to consider material facts by the court.") and see also, *Camarillo v. City of Maywood*, No. 2:07-cv-03469-ODW(SHx), at *2 (C.D. Cal. Mar. 26, 2015)("Additionally, under L.R. 7-18, a motion for reconsideration may not be made on the grounds that a party disagrees with the Court's application of legal precedent" (citing *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 981 (C.D. Cal. 2004))."

-2-

117329396.6

"Where the asserted basis for reconsideration is a failure to consider facts, the moving party must make a "manifest showing" of the court's failure to consider "material facts" previously presented." *Herzfeld v. Teva Pharm. U.S., Inc.*, No. 2:18-cv-09784-ODW (SSx), at *7 (C.D. Cal. Apr. 14, 2020).

"Unhappiness with the outcome is not included within the rule; unless the moving party shows that one of the stated grounds for reconsideration exists, the Court will not grant a reconsideration." *Gish v. Newsom*, EDCV 20-755-JGB (KKx), 2020 WL 6054912, at *2 (C.D. Cal. Oct. 9, 2020). See also, *PegasusSatellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 981 (C.D. Cal. 2004) ("[A] motion for reconsideration may not be made on the grounds that a party disagrees with the Court's application of legal precedent.").

**B.     There Was No Overlooked Fact in the Claim Construction Order**

In the present case, the claim construction Order (ECF 55) considered language of the claims as a whole, the disclosure (including the figures of the patents-in-suit), and the prosecution history (including the Walsh and Becker patents) (*id*. at 1-4, inter alia,). The positions of both parties were identified, summarized, and considered (*id*. at 7-8). The court then analyzed the "plain and ordinary meaning" of the disputed claim language based on the language of all of the claims (*id*. at 8-9), the disclosures of the specification and figures (*id*. at 9-11), and the events of the prosecution history (*id*. at 11-12). The court performed a detailed analysis of the import of the disclosures of the Walsh and Becker references (including NGI's arguments that the edge cording in Walsh was excluded from the mesh edge of the invention), the examiner's concerns under Section 112 for the language proposed by NGI to overcome Walsh, as well as the negotiations that ultimately resulted in the language of the issued patents. This is precisely what is required. See ECF 55 at 4-6 (gathering cases).

### 1. There is No Identified Fact Showing Error

NGI does not present either new or old facts that would suggests any error in the central claim construction analysis in which "wig grip apparatus" is defined in the claim as having both side bands ("securement members") and the central mesh (ECF 55 at 8-9):

> The wig apparatus is comprised of three elements: a first securement member, a second securement member, and a transparent mesh element. See, e.g., '159 Patent Claim 1. Claim 1 specifies that "the mesh element includes a forward periphery" and "the wig grip apparatus terminates at the forward periphery." *Id*. Because the claim language requires the "wig grip apparatus" as a whole to terminate at "the forward periphery" of the mesh element, the plain and ordinary meaning of the claim language supports the inference that, for the same reasons, the forward ends of the adjacent securement members cannot extend beyond the forward periphery of the mesh element.

Nor does NGI identify any material fact that would change the final holding as to the termination of "the wig grip apparatus" (ECF 55 at 12):

| Term | Construction |
| --- | --- |
| "the wig grip apparatus terminates at the forward periphery" (Claims 1 and 20 of the '159 Patent; Claim 1 of the '477 Patent) | Plain and ordinary meaning, i.e., "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus" |

The court's reading of the plain claim language is also consistent with the prosecution history and the examiner's concerns for both obviousness and claim language clarity. As the claim construction order summarized (ECF 55 at 11):

> During prosecution, the PTO assigned Primary Examiner Rachel Steitz to examine the '159 Patent and '744 Patent. Id. at 109, NGI00016. On November 12, 2020, applicant and Steitz participated in an examiner-initiated interview. At that time Steitz "suggested changing the language of 'the wig grip apparatus lacks non-transparency beyond the forward periphery' since it was unclear as to what 'lacks non-transparency' is and it was also unclear as to what was considered 'beyond the forward periphery.'" Id. at 110, NGI00017. Applicant and Steitz "agreed to change the limitation to

-4-

117329396.6

state 'the wig grip apparatus terminates at the forward periphery' to overcome the § 112 rejection [in light of Walsh] and to overcome the prior art of record and put the application in condition for allowance." *Id*.

Plaintiff focuses only on the obviousness issues associated with the Walsh patent and ignores the claim language clarity issues under Section 112 that the examiner identified. (See ECF 58 at 8-11.) Plaintiff's failure to address the plain language of the claims as a whole and lack of a credible fact or explanation of why both NGI and the examiner believed that the final language avoided both the obviousness and clarity issues is telling that there is no actual error in the court's claim construction. See, *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1366 (Fed. Cir. 2016)("[T]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.")

NGI also resorts to a cropped quotation of the examiner Steitz' statement of reasons for allowance (compare ECF 58 at 10) and a distorted interpretation (in red) to argue for error:

> Specifically, the Court quotes the Examiner's statement in her "statement of reasons for allowance," as follows: "Walsh does not disclose the mesh element including a forward periphery and that the forward periphery of the mesh terminates the apparatus." (Exhibit 11, at NGI00013-14.) In other words, Walsh teaches an opaque structure, i.e., cording, directly in front of the forward periphery, such that, in Walsh, the forward periphery does not "terminate [] the apparatus"; rather, in Walsh, an opaque structure of the facemask apparatus occludes the forward periphery: In Walsh, the opaque cording, rather than the forward periphery of the mesh, terminates the apparatus. This demonstrates that both the Examiner and the Applicant understood that the instant amendment was meant to convey that, unlike the mask apparatus in Walsh, no part of the wig grip apparatus of Applicant's claimed inventions may occlude the entire forward periphery, such that, in the Examiner's words, in reference to the claimed inventions, "the forward periphery of the mesh terminates the apparatus.

-5-

117329396.6

The court, however, looked at the same text from an objective viewpoint and considered the whole of the interview summary and arrived at a different, correct, conclusion (ECF 55 at 11-12):

> When explaining the reasons for allowance, Steitz also explained that, although Walsh discloses a facial screen having a mesh element connected to portions of the securement elements, it "does not disclose the mesh element including a forward periphery and that forward periphery of the mesh terminate the apparatus." *Id*. *Steitz distinguished "the mesh" from "the apparatus" within the same sentence, which supports the determination that the examiner understood that "the mesh element" is different from "the wig grip apparatus." Therefore, the prosecution history supports understanding the disputed term by its plain and ordinary meaning, i.e., the mesh element is the most forward part of the grip apparatus, and the securement members may not extend beyond the forward periphery of the mesh.*

This court's construction of the disputed claim language is proper and considers all of the claim language. That is not erroneous.

### 2. The Court Considered the Purpose of the Mesh Insert

Plaintiff initially suggests that the court failed to understand the purpose or "object" of the invention and thus erred in the claim construction. (ECF 58 at 4-6.) This is the same argument that the court considered in its claim construction order (see ECF 55 at 7: "Plaintiff adds that the goal of the claimed invention is to obscure the mesh element from view, so that "having a nontransparent structure forward of the forward periphery" would undermine this express purpose" (citing NGI brief at 13)) and *id*. at 9: "The specification describes the purpose of the invention, . . . "). The court's opinion expressly mentioned the "purpose" of the invention at least four times.

NGI presented similar arguments in its opening and responsive briefs. See ECF 35 at 13-14 and ECF 38 at 8 and 10. Similarly, CHD discussed the purpose of the invention in its opening brief. (ECF 35 at 9.) Reiterating previous

-6-

arguments is supposed to be prohibited in a motion for reconsideration under C.D. Cal. L.R. 7-18.[1]

### 3. A Specification That is Neutral as to Mesh Position Does Not Demonstrate Error in the Claim Interpretation

Plaintiff's second argument is that the specification is "agnostic" (i.e., neutral) regarding the positioning of the mesh element in the band. (ECF 58 at 6-7.) This scope of disclosure was considered by the court in its claim construction order (ECF 55 at 10) and does not, by itself demonstrate error (manifest or otherwise) in this court's claim construction order.

This acknowledgement does, however, stand for the proposition that the inventors did not possess those details of an invention that limited the position of the mesh element relative to the edges of either of the adjacent securement members (bands) apart from what is shown in the drawings. This is part of a "written description" analysis under Section 112 that affects construction of the claims in the patent. Claims must be supported by an enabling written description in the specification. 35 U.S.C 112.

### 4. The Court Fully Understood the Prosecution History

Plaintiff argues that the court has misunderstood the final amendment leading to the allowed claims, the prior art cited by the examiner, and the examiner's statement of reasons for allowance. (ECF 58 at 7-11.) This argument lacks any semblance of support.

In its opening claim construction brief, Plaintiff provided the court with a detailed summary of the undisputed documents in the prosecution history in its opening claim construction brief (ECF 36 at 15-19) and presented detailed

---

[1] "No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." L.R. 7-18. See also, *GCP Applied Techs. Inc. v. AVM Indus., Inc.*, No. CV1907475MWFRAO, 2022 WL 4597418, at *2 (C.D. Cal. Aug. 5, 2022).

117329396.6

arguments as to why its proposed "context" construction should be adopted (ECF 36 at 20).

A similar summary of the "short and incontrovertible" prosecution history and arguments in favor of its proposed context construction were presented in Plaintiff's reply brief for claim construction (ECF 38 at 1 and 4-9). The court obviously read this summary as it summarized the party contentions and arguments in ECF 55 at 7-8.

Even casual inspection shows that the vast majority of Plaintiff's arguments in the current Request for Reconsideration merely repeat the arguments of its earlier briefs. Repeating the same arguments does not make them more correct, but it does waste the court's limited time and unnecessarily increase the cost to defend this case. See, supra at n.1.

## 5. A Motion for Reconsideration Cannot Review the Merits of the Examiner's Section 112 Objection

Curiously, Plaintiff seems to suggest that the court should review the examiner's objections under Section 112 to the broad claim language that NGI had proposed before the final interview. (See ECF 58 at 8-10.) Such a review would have been appropriate in an appeal of the examiner's continued rejection of that claim language, but it is not proper in a claim construction proceeding after NGI accepted the narrowing amendment to gain allowance and an issued patent.

The court properly considered the impact of the agreed claim limitations on the scope and meaning of the patented claim language. The subject matter surrendered as a result of narrowing amendments to gain allowance, whether to avoid prior art or to avoid objection under Section 112, limits the literal scope of the claims as well as their enforceable limits in equity. See, *Festo Corp. v. Shoketsu Kinzoku Kogyokabushiki Co.*, 535 U.S. 722, 736-37 (2002):

-8-

117329396.6

Petitioner contends that amendments made to comply with § 112 concern the form of the application and not the subject matter of the invention. The PTO might require the applicant to clarify an ambiguous term, to improve the translation of a foreign word, or to rewrite a dependent claim as an independent one. In these cases, petitioner argues, the applicant has no intention of surrendering subject matter and should not be estopped from challenging equivalent devices. While this may be true in some cases, petitioner's argument conflates the patentee's reason for making the amendment with the impact the amendment has on the subject matter.

Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope. If a § 112 amendment is truly cosmetic, then it would not narrow the patent's scope or raise an estoppel. On the other hand, if a § 112 amendment is necessary and narrows the patent's scope — even if only for the purpose of better description — estoppel may apply. *A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112.* We must regard the patentee as having conceded an inability to claim the broader subject matter or at least as having abandoned his right to appeal a rejection. In either case estoppel may apply.[2]

### 6. NGI's Intentions for the Proposed, Rejected Pre-Interview Amendments Do Not Control the Interpretation of the Final, Further Amended Claim Language

In its request for reconsideration, NGI focuses on its own intent in presenting the draft proposed amendment (ECF 58 at 8-10) *rather than* the impact that the amendment language agreed to at the interview with examiner Steitz

---

[2] The Court held that the prosecution history did not reflect a disclaimer of subject matter so as to require alignment of the mesh and band edges. (ECF 55 at 12.) CHD does not dispute this holding. CHD submits, however, that the differences in the claims before the interview and after the interview do reflect a surrender of claim scope that will be addressed in more detail in a future motion for noninfringement under the doctrine of equivalents.

-9-

117329396.6

...

actually had on the scope of the claims. Such an isolated focus on a proposed amendment that the examiner did not accept is a red herring that does not reflect error in the court's claim construction from the language of the claims and the intrinsic evidence. Rather, it is mere denial of the consequences of adopting restrictive claim language to gain speedy allowance of the patent rather than challenge the holding by appeal or continued prosecution. (See, e.g., the lawsuit filed by NGI in November 2021 for infringement of the '159 patent against 52 sellers of accused product. See, *NG Imports v. Does 1-52*, No. 1:21-cv-06021 (N.D. Ill.).

### C. The Court Has Already Adopted a Construction that is Consistent with the Intrinsic Evidence

NGI argues in its motion that the court has read limitations into the claims that are inconsistent with the intrinsic evidence. (ECF 58 at 13 et seq.) In its argument, NGI focuses on its proposed amendment that was not agreed to by the examiner and tries to minimize the effects of the language required to comply with the examiner's concerns under Section 112 (*Id*. at 14) and then conflates those arguments with a discussion of whether the amendment to the final claim language represents a "clear and unmistakable" disclaimer of claim scope. (As discussed above, the issue of disclaimer is an issue that limits the reach of infringement under the doctrine or equivalents as discussed in *Festo Corp*, supra at 9. The scope and import of any such disclaimer for infringement will be addressed in a later motion for noninfringement.)

#### 1. Repeating Arguments for the Previously Proposed Context Construction is Not Helpful

One solution proposed by NGI is to adopt its previously proposed "context" construction that repeats its earlier arguments in its Markman briefs. (ECF 58 at 14-15.) No new facts are identified, and L.R. 7-18 prohibits rehashing old arguments.

-10-

117329396.6

## 2. The Newly Proposed Constructions Add New Matter and Do Not Reflect the Language of the Patented Claims

Having failed to identify any new fact showing error in the construction of the patented claims, NGI proposes two new claim constructions/revisions that would overcome the effects of the Walsh patent with new, negative limitations that try to identify the invention by what it is not, rather than what it is. (ECF 58 at 15.) Neither new construction, however, makes any effort to find support from the language of the patented claims or address the events of the final interview where that language was agreed on.

NGI has not identified grounds for support in the specification for either of its proposed negative limitations. Negative limitations in claims need some basis for support in the written description. See, *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1288 (Fed. Cir. 2021)("The specification never mentions gimbaled or non-gimbaled geophones, nor does it provide a reason to exclude gimbals. That silence does not support reading the claims to exclude gimbaled geophones."), *Santarus, Inc. v. Par Pharmaceuticals.*, *Inc.*, 694 F.3d 1344, 1351 (Fed. Cir. 2012)("Negative claim limitations are adequately supported when the specification describes a reason to exclude the relevant limitation."); *Williams v. Gen. Surgical Innovations, Inc.*, 60 F. App'x 284, 287 (Fed. Cir. 2003)("The absence of a requirement to leave the expander in place is not a teaching to remove it."); and *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1017 (Fed. Cir. 2022)("While a negative limitation need not be recited in the specification in *haec verba*, there generally must be something in the specification that conveys to a skilled artisan that the inventor intended the exclusion, such as a discussion of disadvantages or alternatives.")

If there is no support for the added negative limitation, the claim is invalid. *Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1356 (Fed. Cir. 2015)("In one recent

117329396.6

case, this court found that if the specification directly forecloses the negative claim limitation, it is invalid under § 112.")

NGI has not identified a basis in the written disclosure for the asserted negative limitations it urges the court to adopt. It has, however, acknowledged, that the specifications of the '159 and '477 patents are "agnostic on whether the laterally placed securement members are disposed forward or rearward relative to the forward periphery of the mesh."[3] (ECF 58 at 6.) This seems to be an admission that the specification lacks written description support for the newly proposed, negative claim constructions ("do not occlude" or "unoccluded"). Such unsupported constructions cannot be adopted absent support in the written description and harmony with the actual claim language.

Pointedly, it appears from its newly proposed "constructions" (revisions) that Plaintiff wants the court to rewrite the issued claims to change the plain language of the patented claims and to give it new claims that re-do the prosecution to avoid the events of the prosecution history and the amendment agreed to with the examiner. This is not the proper role of claim construction.

A claim construction analysis does not permit the claims to be redrafted for more preferred language. See, *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n.6 (Fed. Cir. 1990) ("Nothing in any precedent permits judicial redrafting of claims.)."

D. **Conclusion**

Plaintiff's Request for Reconsideration does not comply with C.D. Cal. L.R. 7-18 in that it does not have "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered" and it repeats arguments made in support of its original claim construction briefing. Notably, Plaintiff

---

[3] Apart, of course, from the preferred embodiments in which the forward or rearward peripheries of the mesh element is in alignment with the forward or rearward edge of the securement bands. (Abstract, Figures 1-6).

-12-

117329396.6

continues to assert its original "context" arguments that are not actually a construction of the patented claim language. Plaintiff also presents two, new, constructions having negative limitations that are not supported by the written description and which do not track with the claim language or the events of the prosecution history. Accordingly, the motion for reconsideration (ECF 58) should be denied.

Dated:  November 3, 2022              Respectfully submitted,

By   /s/Lance G. Johnson
Lance G. Johnson
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, VA 22030
(202) 445-2000
Docketing@lgjlegal.com