WILLIAM E. ADAMS (BAR NO. 153330)
william.adams@ffslaw.com
MARK B. MIZRAHI (BAR NO. 179384)
mark.mizrahi@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

Attorneys for Plaintiff NG IMPORTS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NG IMPORTS, LLC, a California limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>CREATEDHAIR DESIGNS, LLC, a California limited liability company, et al.,<br><br>        Defendants. | Case No. 2:21-CV-08086-JAK-RAO<br><br>**PLAINTIFF NG IMPORTS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT FOR INFRINGEMENT OF THE ASSERTED CLAIMS OF THE UTILITY PATENTS IN SUIT**<br><br>**The Hon. John A. Kronstadt**<br><br>*[Filed concurrently with Motion; Notice of Motion and Motion; Statement of Uncontroverted Facts; Declaration of Mark B. Mizrahi; Declaration of Erin Lunsford; Declaration of Yehudis Geisinsky]*<br><br>Date: March 27, 2023<br>Time: 8:30 AM<br>Crtrm: 10B, First Street Courthouse<br><br>Trial Date:      None Set |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

5697602.2 27421-831

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Pursuant to Fed. R. Civ. P. 56, Plaintiff NG Imports, LLC ("Plaintiff")
2  respectfully submits this Memorandum and accompanying Rule 56(a)(1) Statement,
3  Declarations of Erin Kennedy Lunsford, Yehudis Geisinsky, and Mark B. Mizrahi,
4  and all the exhibits annexed thereto, in support of its motion for partial summary
5  judgment on the issue of infringement of U.S. Patent Nos. 10,881,159 (the "'159
6  patent") and 10,945,477 (the "'477 patent") (the "Patents-in-Suit"), Counts I and III,
7  respectively. As demonstrated in these papers and the supporting evidence, only one
8  conclusion could be reached by a reasonable jury as to infringement; by making,
9  using, offering for sale, selling, and importing Defendants CreatedHair Designs, LLC
10  and CreatedHair, Inc.'s ("Defendants") Crystal WigSECURE product, Defendants
11  have infringed all asserted claims of the Patents-in-Suit.

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

13  Plaintiff is the owner by assignment of both Patents-in-Suit that are directed to
14  a wig grip apparatus (claimed in the '159 patent) and a method of using a wig grip
15  apparatus (claimed in the '477 patent).  A wig grip apparatus may be briefly described
16  as a headband configured to encircle the head of a wearer in order to secure a wig to
17  the wearer's head.  Since its first sales in the marketplace in 2019, the then soon-to-
18  be-patented commercial embodiments of Plaintiff's claimed wig grip apparatus have
19  achieved commercial success at the highest levels in the wig and hairpiece industry
20  in every state and in foreign countries.

21  The key distinguishing factor in the Patents-in-Suit, and the primary issue at
22  bar, is a transparent mesh element in the wig grip apparatus that may be aligned by
23  the wearer with the parting line of a transparent lace foundation wig to obscure the
24  presence of the apparatus beneath the wig.  As detailed below, Defendants' Crystal
25  WigSECURE wig grip apparatus (the "Accused Device"), by its own admission and
26  by other incontrovertible evidence, incorporates every element of the asserted claims.

27  On September 21, 2022, the Court issued its Order Regarding Claim
28  Construction, as to the single disputed claim term, namely, "the wig grip apparatus

1  terminates at the forward periphery" (the "Disputed Limitation").   The Court
2  construed that term to mean: "the forward periphery of the mesh element is the most
3  forward portion of the wig grip apparatus."

4      Even in instances where a limitation of a claim is not present literally,
5  infringement may be shown if that limitation is present under the doctrine of
6  equivalents.  Here, with the exception of the Disputed Limitation, Defendants admit
7  the literal presence of each limitation in the Accused Device of the '159 patent and
8  that they perform the claimed method of the '477 patent. And, with regard to the
9  Disputed Limitation, Plaintiff may rely upon the doctrine of equivalents, and the
10 Accused Device meets this limitation under that doctrine.   Specifically, Plaintiff
11 demonstrates that, despite the Disputed Limitation having been added to overcome a
12 prior art reference, the rationale for the amendment was tangential to the equivalent
13 at issue.  Additionally, the forward periphery of the mesh element in the Accused
14 Device (even though it is receded relative to the forward edges of the securement
15 members) performs the same function, in the same way, to achieve the same result as
16 the Disputed Limitation in the asserted claims.

17     On the basis of the foregoing, there are no genuine issues of material fact in
18 this regard, and Plaintiff is entitled to a determination that Defendants have infringed
19 all of the asserted claims of the Patents-in-Suit.

20              **II.     STATEMENT OF FACTS**

21     Pursuant to Local Civil Rule 56-1 and the Court's Standing Orders, Plaintiff
22 files contemporaneously with its motion a Statement of Uncontroverted Facts and
23 Conclusions of Law ("SUF") for which there are no genuine issues to be tried. The
24 undisputed facts can be summarized as follows:

25     A.  Plaintiff is the owner by assignment of the Patents-in-Suit.

26     B. Defendants made, imported, advertised, promoted, offered for sale and sold
27 products referred to herein as the "Accused Device." The "Accused Device"
28 comprises the Defendants' Crystal WigSECURE product (available in various colors)

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  which are grip apparatuses with a mesh element used to secure a wig or hairpiece to
2  the head of a wearer.

3       C. Plaintiff has asserted that Claims 1, 2, 10, 11, 14, 20, and 21 of the '159
4  patent and claims 1 and 2 of the '477 patent (collectively, the "Asserted Claims") are
5  infringed by the Accused Device.

6       D. Defendants have admitted that, with the exception of the Disputed Claim
7  Limitation, all of the elements of Claims 1, 20 and 21 of the '159 Patent are found in
8  the Accused Device.

9       E. The named inventors (the "Inventors") on the Patents-and-Suit added the
10  precursor to the Disputed Limitation (*i.e.*, "the wig grip apparatus lacks non-
11  transparency beyond the forward periphery") during prosecution to overcome the
12  prior art facemask apparatus disclosed in U.S. Patent No. 5,265,280 ("Walsh").

13       F. The Examiner assigned by the USPTO to the applications underlying the
14  Patents-in-Suit proposed amending the Inventors' claim amendment solely to clarify
15  the meaning of the applicant's amendment, as follows: "the wig grip apparatus
16  terminates at the forward periphery."

17       G. The Inventors agreed to the Examiner's proposed amendment to the
18  Disputed Limitation.

19       H. The Examiner's citation to and discussion of the prior art Walsh reference
20  focuses not on the relative forward or backward positioning of the forward periphery
21  of the mesh element relative to the forward edges of the securement members (the
22  equivalent in question), but rather focuses, by its own terms, exclusively on
23  overcoming the facial mask in Walsh, having opaque cording appearing in front of
24  the forward periphery of the mesh element.

25       I. An objective view of the file history demonstrates that the Inventors'
26  objectively apparent reason for the narrowing amendment (discernible from the file
27  history) bears no more than a tangential relation to the equivalent in question.

28       J. The Court construed the Disputed Limitation ("the wig grip apparatus

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  terminates at the forward periphery") to mean "the forward periphery of the mesh is
2  the most forward portion of the wig grip apparatus."

3    K.    The claim limitation "the wig grip apparatus terminates at the forward
4  periphery" is present in the Accused Device under the doctrine of equivalents, as the
5  mesh element and its forward periphery in the Accused Device performs the same
6  function, in the same way, to achieve the same result.

7    L. Because the Defendants concede (with the exception of the Disputed
8  Limitation) that all of the limitations of the asserted claims of the '159 patent are
9  present in the Accused Device and Defendants perform all of the steps of the methods
10  described in the asserted claims of the '477 patent, and Plaintiff has demonstrated that
11  the Disputed Limitation is present in the Accused Device under the doctrine of
12  equivalents, Defendants directly infringe all of the Asserted Claims.

### III.    LEGAL AUTHORITY

A.    Summary Judgment

15       A motion for summary judgment is granted where "the movant shows that there
16  is no genuine dispute as to any material fact and the movant is entitled to judgment as
17  a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears
18  the initial burden to show the basis for the motion and to identify those portions of the
19  pleadings, depositions, affidavits, and discovery responses that demonstrate the
20  absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S.
21  317, 322 (1986). Where the moving party will have the burden of proof on an issue at
22  trial, the movant must affirmatively demonstrate that no reasonable trier of fact could
23  find other than for the moving party.  If the moving party meets this initial burden,
24  the motion will be granted unless the nonmoving party sets forth "specific facts
25  showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477
26  U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

27       Only admissible evidence may be considered in connection with a motion for
28  summary judgment. Fed. R. Civ. P. 56(c)(2). In such a motion, a court is not to make

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  any credibility determinations or weigh conflicting evidence. Further, all inferences

2  are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec.*

3  *Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630- 31 (9th Cir. 1987).

4  However, conclusory, speculative testimony in declarations or other evidentiary

5  materials is insufficient to raise genuine issues of fact and defeat summary judgment.

6  *See Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

7  Granting a motion for "summary judgment under Rule 56, Fed. R. Civ. P., is

8  entirely appropriate, in a patent as in any other case, where there is no genuine issue

9  of material fact and the movant is entitled to judgment as a matter of law." *SRI Int'l*

10  *v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

11  B.  Availability of Summary Judgment for Doctrine of Equivalents

12  Although equivalence is a factual matter normally reserved for a fact finder, a

13  court should grant summary judgment in any case there is no genuine issue of material

14  fact on the issue of equivalence. *Aevoe Corp. v. AE Tech Co.*, 40 F. Supp. 3d 1351,

15  1361 (D. Nev. 2014) (granting summary judgment on doctrine of equivalents for

16  patent holder); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir.

17  1997). "In deciding a motion for summary judgment on the question of equivalency,

18  the Court must view in favor of the nonmovant all properly raised and adequately

19  supported factual issues that were properly raised and adequately supported in

20  response to the motion, drawing all reasonable inferences in favor of the nonmovant."

21  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001).

22  C.  General standards for infringement

23  Determining patent infringement is a two-step process. *Tate Access Floors, Inc.*

24  *v. Maxcess Techs., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000). "First, the claim must be

25  properly construed to determine its scope and meaning. Second, the claim as properly

26  construed must be compared to the accused device or process." *Id.* (citation omitted).

27  "Whether an accused device or method infringes a claim either literally or under the

28  doctrine of equivalents is a question of fact." *Schoell v. Regal Marine Indus., Inc.*,

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  247 F.3d 1202, 1207 (Fed. Cir. 2001).

2  D.  General standard for doctrine of equivalents

3      Even where an accused device does not literally infringe, the patentee may
4  prove infringement under the doctrine of equivalents. *See Kemco Sales, Inc. v.*
5  *Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000). The doctrine of
6  equivalents prevents an accused infringer from avoiding infringement by making
7  unimportant or insubstantial changes to the claimed invention. *Lear Siegler, Inc. v.*
8  *Sealy Mattress Co. of Michigan*, 873 F.2d 1422, 1425 (Fed. Cir. 1989).  The patentee
9  also bears the burden of proving infringement under the doctrine of equivalents. *Am.*
10 *Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338–39 (Fed. Cir. 2011). The
11 equivalence of a proposed substitute for a missing element is a question of fact. *See*
12 *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 38–39 (1997).

13      To apply the doctrine of equivalents "[t]he trier of fact, applying the claims as
14 construed, finds whether the accused device, element by element, is equivalent to that
15 which has been patented." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473,
16 1480 (Fed. Cir. 1998). The Supreme Court confirmed this rule in *Warner-Jenkinson*
17 *Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997):

18      Each element contained in a patent claim is deemed material to
19      defining the scope of the patented invention, and thus the doctrine of
20      equivalents must be applied to individual elements of the claim, not
21      to the invention as a whole.

22 *Id.* "An equivalent must be found for every limitation of the claim somewhere in an
23 accused device, but not necessarily in a corresponding component, although that is
24 generally the case." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d
25 1251, 1259 (Fed. Cir. 1989). Furthermore, a combination of physical components may
26 serve as an equivalent to a single limitation of the claimed invention. *Searfoss v.*
27 *Pioneer Consol. Corp.* 374 F.3d 1142, 1151 (Fed. Cir. 2004); *see Ethicon Endo-*
28 *Surgery Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) ("[T]wo

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention…").

There are at least two tests to determine infringement under the doctrine of equivalents. One test is the "function-way-result test." "Under that test, a fact finder considers whether the element of the accused device at issue performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim." *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir. 1998). The Supreme Court also has observed that the function-way-result test "may be suitable for analyzing mechanical devices" – the category into which the Accused Device falls. *Warner-Jenkinson*, 520 U.S. at 39. The second test examines whether the differences between the two are insubstantial when considered by one of ordinary skill in the art. *KJC Corp. v. Kinetic Concepts*, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

E. Estoppel and Availability of Doctrine of Equivalents

A narrowing amendment made for a substantial reason relating to patentability gives rise to a rebuttable presumption that the patentee has surrendered all subject matter between the original claim limitation and the amended claim limitation. *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F. 3d 1359, 1367 (Fed. Cir. 2003) ("Festo III").

A patentee may rebut the presumption of surrender, however, by one of three ways. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002) ("Festo II"). The patentee may show (1) that the alleged equivalent would have been unforeseeable at the time of the amendment, (2) that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question, or (3) that there was "some other reason" that the patentee could not reasonably have been expected to have described the alleged equivalent. *Id.* at 740-41; *Festo* III, 344 F.3d at 1366–67.

Whether prosecution history estoppel applies, and hence whether the doctrine

of equivalents may be available for a particular claim limitation, presents a *question of law* to be determined by the court. *Festo III*, 344 F. 3d at 1367-68.

## IV.   ARGUMENT

A. <u>The doctrine of equivalents is available because the Disputed Limitation bears no more than a "tangential relation" to the equivalent in question.</u>

Because the rationale underlying the amendment adding the Disputed Limitation bore no more than a "tangential relation" to the equivalent in question, Plaintiff may employ the doctrine of equivalents with respect to that limitation. *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1368–71 (Fed. Cir. 2004); *CH2O, Inc. v. Meras Eng'g, Inc.*, Case No. 13-cv-08418 JAK (GJSx), 2017 WL 11631638 (C.D. Cal. July 13, 2017). The inquiry into whether a patentee can rebut the *Festo* presumption under the "tangential" criterion focuses on the patentee's objectively apparent reason for the narrowing amendment. *CH2O, Inc. v. Meras Eng'g, Inc.*, 2017 WL 11631638 *6 (citing *Festo III*) Thus, "whether an amendment was merely tangential to an alleged equivalent necessarily requires focus on the context in which the amendment was made ...." *Id*.

The Inventors added the precursor to the Disputed Limitation – *i.e.*, "the wig grip apparatus lacks non-transparency beyond the forward periphery" – by way of amendment on August 5, 2020 in order to overcome USPN 5,265,280 issued to Walsh ("Walsh"), cited as §102 prior art by the USPTO in the Office Action dated June 12, 2020. [SUF## 14-15.] Therefore, that amendment comprises a narrowing amendment which gives rise to a presumption of surrender of the doctrine of equivalents with regard to that amendment. *Festo III*, 344 F. 3d at 1365.

An objective view of the file history, however, demonstrates that the patentee's objectively apparent reason for the narrowing amendment bears no more than a tangential relation to the equivalent in question. *Id*.[1] The equivalent in question

---

[1] Being that most of the pertinent facts relate to the file history for the '159 patent, Plaintiff focuses on that file history for purposes of this submission.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

relates to a forward periphery of the mesh (132) that is receded relative to the forward edges (126) of the securement members (108, 114), something that was not addressed by the primary prior art reference (Walsh) or the Disputed Limitation. Consequently, Plaintiff successfully rebuts that presumption. The numbered reference numbers are those set forth in FIG. 1 of the Patents-in-Suit. (*See* Exhibits B,D to the Mizrahi Decl.)

To assist the Court in identifying the various limitations of the Asserted Claims referenced herein, Plaintiff below sets forth FIG. 1 from the Patents-in-Suit bearing Plaintiff's annotations thereto, including the "mesh element," "forward periphery," "forward edges," and "securement members."



### 1. **The Walsh Prior Art Reference.**

In the June 12, 2020 Office Action, the Examiner cited to Walsh ("Walsh") as a 35 U.S.C. §102 prior art reference, depicted below (and annotated in red font) for the Court's convenience:



FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Walsh disclosed a facemask containing a transparent mesh affixed to first and second

2  inboard portions, bounded by opaque cording (depicted above).

3      2. **Addition of the Disputed Limitation based on the Walsh Reference**.

4      Thereafter, on or about August 5, 2020, the Inventors submitted claim

5  amendments and arguments in their Reply to Non-Final Office Action, including by

6  adding a limitation that further distinguished the claims over Walsh.  Specifically, the

7  Inventors added the following limitation to overcome Walsh: "the wig grip lacks non-

8  transparency beyond the forward periphery."  [SUF# 14.]

9      This amendment was directed to overcome Walsh, which disclosed a facemask

10  with opaque cording in front of the forward (and rearward) periphery of the mesh

11  element, by specifying that no non-transparent cording (or other opaque structure of

12  the apparatus) appears directly <u>in front</u> of the entire forward periphery of the mesh

13  element; hence, the Inventors' proposed amendment to overcome Walsh, namely, that

14  "the wig grip apparatus lacks non-transparency beyond the forward periphery."  Both

15  the Inventors and the Examiner understood this and ultimately came to an agreement

16  on how this same limitation ought to be expressed (more clearly in the Examiner's

17  eyes), namely, that "the wig grip apparatus terminates at the forward periphery."

18      In contrast, the equivalent in question relates to a completely different structural

19  limitation, namely, the relative positioning, forward or rearward, of the forward

20  periphery of the mesh relative to the forward edges of securement members.  That is,

21  the Walsh reference and claim amendment relate to what occurs directly in front of

22  the forward periphery of the <u>mesh</u>, and <u>not</u> to the forward or rearward position of the

23  forward edges of the securement members relative to a hypothetical extended

24  boundary line aligned with the forward periphery.  And the Examiner made clear that

25  her proposed amendment ("the wig grip apparatus terminates at the forward

26  periphery") was directed solely to <u>clarify</u> the language of the Inventors' amendment

27  to distinguish the claims from Walsh, which she characterized as "the closest prior

28  art."  [SUF# 20.]  The Inventors' decision to accede to the Examiner's proposed

clarifying amendment – to the "wig grip apparatus terminates at the forward periphery" limitation – must be considered in the context of Walsh and the file history statements associated therewith, all of which were directed to distinguishing the invention from the Walsh facemask which had cording directly bordering in front of the entire expanse of the forward periphery. *See Festo II*, 535 U.S. at 740–41

Notably, the Inventors' "objectively apparent reason for the narrowing amendment" can be confirmed by their statements during prosecution, which confirm that the "rationale underlying the [narrowing] amendment [bore] no more than a tangential relation to the equivalent question" – here, that rationale was directed to clarifying that the claimed wig grip apparatus lacked opaque structures appearing directly in front of the entire forward periphery. *See id.*  Specifically, the Inventors stated [SUF## 14-15.]:

> "In critical contrast, the elastic cording 20 in Walsh, which is provided to allow 'the [mesh] covering to conform to the anatomy of the wearer comfortably and securely' (Walsh, Col. 3 lines 7-9) are non-transparent structures present beyond the peripheries of the mesh 24.  See, for example, FIGS. 1, 1a, 3, 4 and 4 of Walsh.  Notably, including non-transparency beyond the forward periphery of the transparent mesh would frustrate the purpose of the instant invention."

For sake of clarity, Plaintiff has reproduced below the referenced Fig. 3 from Walsh and annotated it in red font to graphically illustrate the Inventors' Remarks, above.

//

//

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100



**FIG. 3 from Walsh**

"peripheries of the mesh"

"elastic cording 20" = "non-transparent structures present beyond the peripheries of the mesh 24"

Thus, nothing stated by the Inventors in the file history can reasonably be interpreted as a surrender of claim scope covering the equivalent in question, namely, embodiments where the forward periphery is receded relative to the forward edges of the securement members. Indeed, there was no mention whatsoever by the Examiner (who proposed the amendment) of the relative positioning, forward or rearward, of the forward edges of the securement members relative to the forward periphery of the mesh element. [SUF## 17-18.] This stands to reason, as nothing in Walsh – the only cited prior art in support of the Examiner's amendment – precludes the Inventors' claimed wig grip apparatus invention from having the mesh element being receded relative to the forward edges of the securement members. [SUF# 19.]

Because the mesh element of the claimed wig grip apparatus is intended to hide the apparatus from view under a part line of a lace foundation wig or hairpiece [SUF# 35], naturally, having a nontransparent structure in front of the entire forward periphery of the mesh would frustrate that purpose. In a lace foundation wig, the hairs of the wig are attached to a substantially transparent foundation, such that once a part line is created in the wig, the scalp of the wearer is visible. [SUF# 10.] So, as the

Inventors stated in the August 5, 2020 Reply to Office Action (as quoted above) in reference to the amendment to overcome the Walsh reference, "including non-transparency beyond the forward periphery of the transparent mesh would frustrate the purpose of the instant invention."  [SUF# 15.]

To graphically illustrate this, Plaintiff sets forth Figure 1 from the Patents-in-Suit on the left, where "the wig grip apparatus lacks non-transparency beyond the forward periphery [of the mesh]" and a hypothetical Figure 1 where, as in Walsh, the apparatus possesses non-transparent cording beyond – in a sense of in front of – the forward periphery of the mesh.  Both the Inventors' initial amendment and the amendment proposed by the Examiner (as construed by the Court) exclude the design depicted on the right, below.



| Actual Fig. 1 of '159 patent in accordance with the invention (avoiding Walsh) | Hypothetical Fig. 1 of '159 patent that reads on Walsh and frustrates purpose |

Notably, although the Court's construction interprets the claim limitation – "the wig grip apparatus terminates at the forward periphery" more narrowly than was necessary to overcome the Walsh reference, the file history makes clear that the Inventors only surrendered equivalents relating to cording or other opaque structures appearing in front of the entire forward periphery of the mesh (ala Walsh), not devices comprising a mesh element where the forward periphery is receded relative to the forward edges of the securement members – the equivalent at issue.

As such, Plaintiff is not barred from asserting that wig grip apparatuses with the forward periphery of the mesh element set back from the forward edges of the securement members (without opaque structures of the apparatus occluding the entire forward periphery) are equivalent to the claimed wig apparatuses where "the forward

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

periphery of the mesh element is the most forward portion of the wig grip apparatus." Accordingly, the narrowing amendment can only be said to have a "tangential relation" to the equivalent at issue – namely, a wig grip apparatus with the forward periphery receded relative to the forward edges of the securement members.

The facts of this case are highly similar to that of *Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1368–71 (Fed. Cir. 2004), where the Federal Circuit found a claim amendment was only tangentially related to the asserted equivalent, and therefore overcame the presumption of total surrender. In that case, the asserted claim was directed to a process of repairing cracked sewer pipes by installing a liner in the pipe without removing the pipes from the ground. The asserted claim recited the use of "a cup" to apply a vacuum to the pipe. Under the facts of the case, the Federal Circuit had construed the claim to be limited to a single cup in a previous opinion. The accused process used multiple cups, and therefore did not literally infringe. The district court found, however, that the multiple cup process did infringe under the doctrine of equivalents.

After considering the prosecution history, the Federal Circuit affirmed and ruled that no prosecution history estoppel applied because the narrowing amendment to the claims was only tangentially related to the assertion of multiple cups as equivalents. During prosecution, the applicant had presented a broad independent claim that did not recite the use of any cups to create a vacuum. A dependent claim recited the use of "a cup." To distinguish over a prior art rejection, the applicant canceled its original independent claim, and its dependent claims, and presented a new claim that effectively merged the limitations of the prior claims. The applicant also argued that the prior art used a large suction source to create a vacuum because the source was located far away from the resin front. The applicant's narrowing amendment, while adding the limitation of "a cup," also added the limitation that the cup had to be near the resin front to distinguish over the prior art on the bases that by locating the vacuum source near the resin front a smaller suction source could be used

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    than shown in the prior art.

2      The Federal Circuit specifically noted that the applicant never stated to the

3 Examiner that the problem it solved could not be solved by using multiple vacuum

4 sources. Finding that the assertion of equivalents for multiple cups was only

5 tangentially related to the reasons for the applicant's amendment because the assertion

6 of multiple cups did not address the distance of the cups from the resin source and the

7 ability to use a smaller suction source, the Federal Circuit instructed:

> In our view, Insituform has rebutted the *Festo* presumption. The
> prosecution history and our discussion of that history … compel the
> conclusion that ***the amendment limiting the literal scope of claim 1 to a
> single cup process bears "only a tangential relation," if that, "to the
> equivalent in question,"*** a process using multiple cups. The question we
> must address is "whether the reason for the narrowing amendment was
> peripheral, or not directly relevant, to the alleged equivalent." As the
> discussion above indicates, the narrowing amendment in this case was
> for the purpose of distinguishing the invention over Everson. Insituform
> made it clear that the difference between its process and Everson was
> that its process did not have the disadvantage of the Everson process of
> a large compressor at the end of the liner. ***There is no indication in the
> prosecution history of any relationship between the narrowing
> amendment and a multiple cup process, which is the alleged equivalent
> in this case.*** Thus, we hold that plaintiffs have successfully rebutted the
> *Festo* presumption by establishing that the amendment narrowing the
> claimed invention from multiple cups to a single cup was tangential to
> accused Process 1, which used multiple cups attached at different points
> along the liner tube. We therefore affirm the judgment of infringement
> under the doctrine of equivalents.

385 F.3d at 1370–71.

     Likewise, here, the question this Court must address is "whether the reason

for the narrowing amendment was peripheral, or not directly relevant, to the alleged

equivalent." As demonstrated above, the narrowing amendment in this case was for

the purpose of distinguishing the invention over Walsh – a facial mask with opaque

cording bordering the peripheries of the mesh element of the mask. The Inventors

made this clear through their Remarks accompanying their claim amendment

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1 intended to overcome the Walsh reference. [SUF## 14-15; 19.]  There is no

2 indication in the prosecution history of any relationship between the narrowing

3 amendment "the wig grip apparatus terminates at the forward periphery" and a wig

4 grip apparatus where the forward periphery of the mesh is receded relative to the

5 forward edges of the securement members, which is the alleged equivalent in this

6 case.

7      Thus, nothing stated by the Inventors – nor the Examiner – relative to the

8 Disputed Limitation can reasonably be interpreted as a surrender of claim scope

9 precluding an embodiment where the forward periphery is receded relative to the

10 forward edges of the securement members from being an equivalent to the Disputed

11 Limitation – "the wig grip apparatus terminates at the forward periphery."  Indeed,

12 there was no mention whatsoever by the Examiner, in connection with the amendment

13 in question, of the relative positioning, forward or rearward, of the securement

14 members relative to the forward periphery of the mesh element.   And nothing

15 disclosed in Walsh precludes the Asserted Claims from having the mesh element

16 receded relative to the forward edges of the securement members.

17      Indeed, Walsh had no bearing on the relative position of the forward edges of

18 securement members to the line forming the forward periphery of the mesh, i.e., how

19 forward or rearward the securement members may be relative to the forward periphery

20 of the mesh element.  Thus, the amendment narrowing the claimed invention to a "wig

21 grip apparatus [that] terminates at the forward periphery" (construed by the Court to

22 mean that "the forward periphery of the mesh is the most forward portion of the wig

23 grip apparatus") has only a tangential relation to the equivalent feature of the Accused

24 Device, which has the forward periphery of the mesh element receded relative to the

25 forward edges of the securement members.  *Insituform Technologies, Inc. v. CAT*

26 *Contracting, Inc.*, 385 F.3d at 1370–71.

27      Because the rationale underlying the amendment adding the Disputed

28 Limitation bore no more than a tangential relation to the equivalent in question,

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Plaintiff may employ the doctrine of equivalents with respect to that limitation.

2  B.    The Accused Device infringes the asserted claims of the '159 patent

3      1.    **With the exception of the Disputed Limitation, all limitations of the**
4          **asserted claims of the '159 patent are literally present in the**
5          **Accused Device.**

6      Defendants admit that the Accused Device literally possesses each and every
7  element of the Asserted Claims, except for the Disputed Limitation construed by the
8  court, namely, "the wig grip apparatus terminates at the forward periphery."  [See
9  SUF## 21 through 27.]  As demonstrated, below, the Disputed Limitation, too, is
10  met by the Accused Device, under the doctrine of equivalents.

11      2.    **Defendants' Accused Device meets the Disputed Limitation under**
12          **the doctrine of equivalents.**

13      In light of the above, whether or not the Accused Device infringes the asserted
14  claims of the '159 patent hinges upon whether the Disputed Limitation ("the wig grip
15  apparatus terminates at the forward periphery") is met by the Accused Device under
16  the doctrine of equivalents.  As demonstrated below, the Accused Device meets this
17  limitation under the doctrine of equivalents.

18          a.    The Disputed Limitation is present in the Accused Device under the
19              doctrine of equivalents

20      The Accused Device meets the Disputed Limitation ("the wig grip apparatus
21  terminates at the forward periphery") under the doctrine of equivalents.  This is true
22  even under the Court's construction of that limitation, namely, "the forward periphery
23  of the mesh element is the most forward portion of the wig grip apparatus."  The
24  equivalent in question relates to a forward periphery of the mesh that, as in the
25  Accused Device, is receded relative to the forward edges of the securement members.

26      Both the claimed apparatuses and the Accused Device have a transparent mesh
27  element with a forward periphery that perform the same function, namely, concealing
28  the presence of the wig grip apparatus along the part-line beneath a lace foundation

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

wig. [SUF# 35.] The way the Accused Device and the claimed wig grip apparatuses perform the function of obscuring the presence of the wig grip apparatus along the part-line of the wig is the same.  [SUF# 39.] The result is also the same.  [SUF# 39.] As demonstrated below, this is not only true when looking at the claimed device and the Accused Device as a whole, but also specifically with respect to the Disputed Limitation.  For the Court's convenience, Plaintiff sets forth below a photo of the Accused Device annotated to show the <u>receded</u> mesh relative to the hypothetical line across the forward edges of the securement members (*see*, Exh. N to Mizrahi Decl.):



<u>Function</u>.  The forward periphery of the mesh in both the claimed apparatuses and the Accused Device perform the same function, whether it is "the most forward portion of the wig grip apparatus" or is receded relative to the hypothetical line drawn across the forward edges of the securement members.

Notably, both the claimed apparatuses and the Accused Device possess a mesh element having a forward periphery, where at least some portion of the forward periphery is free from any other elements of the apparatus appearing directly in front of it, which allows the apparatuses to be hidden from view under the hair hair parting-line of a lace foundation wig.  This can be readily seen by reference to the photographs and video of the Accused Device in Exhibits L, N the Mizrahi Decl.  It is also the case with the Disputed Limitation, as that claim term makes clear that, among other things, no part of the apparatus appears in front of the forward periphery of the mesh, as evidenced by the language of this limitation: "the wig grip apparatus terminates at the forward periphery."  It is also evident from the Court's interpretation of the Disputed Limitation, namely, "the forward periphery of the mesh element is the most forward

1  portion of the wig grip apparatus."  Obviously, if "the forward periphery of the mesh

2  element is the most forward portion of the wig grip apparatus," then it is free from

3  other elements of the apparatus appearing directly in front of it.  (As discussed above,

4  this is what distinguishes the claimed apparatuses from Walsh.)  [SUF## 14, 38.]

5        This allows the transparent mesh elements in the asserted claims and in the

6  Accused Device to perform the same *function* of hiding the presence of the wig grip

7  apparatus under the part line of a transparent lace foundation wig, as, were other

8  elements of the wig grip apparatus situated in front of the entire forward periphery of

9  these devices, then it would frustrate the purpose of the invention which is to obscure

10  the presence of the wig grip apparatus under the parting line of a lace foundation wig.

11  This is true whether the forward periphery of the mesh is "the most forward portion

12  of the wig grip apparatus" or is receded relative to the forward edges of the securement

13  members. [SUF## 15, 39-40.]

14        <u>Way</u>.  The way the Accused Device and the claimed wig grip apparatus perform

15  the function of hiding the presence of the wig grip band along the parting line of the

16  wig/hairpiece is also identical.  In both in the accused and claimed apparatuses, the

17  transparent mesh element can be aligned with the hair parting line of the lace

18  foundation wig/hairpiece to hide the presence of the wig band beneath the

19  wig/hairpiece, as both apparatuses lack any opaque element of the apparatus

20  appearing in front of the entire forward periphery of the mesh element.  This is true

21  whether or not the forward periphery of the mesh element in the claimed device is the

22  most forward portion of the wig grip apparatus relative to the forward edges of the

23  securement members on either side of the mesh (applying the Court's interpretation

24  to the Disputed Limitation) or whether the forward periphery is receded relative to the

25  forward edges of the securement members (as is the case with the Accused Device).

26  [SUF# 40.]

27        That is, despite the fact that the forward periphery of the mesh in the Accused

28  Device is receded relative to the hypothetical line drawn acreoss the forward edges of

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  the securement members – thereby leaving an absence of any material of the apparatus

2  directly in front of the forward periphery of the mesh – the fact remains that the mesh

3  element in the Accused Device is transparent and lacks cording or other opaque

4  structures directly in front of the entire expanse of the forward periphery of the mesh.

5  This facilitates the mesh portion of the Accused Device being transparent when placed

6  under the part-line of a wig.  Were this not the case, then the Accused Device would

7  be visible under the parting line of the wig when worn under a lace foundation wig.

8  Therefore, the mesh element and its forward periphery perform the same function in

9  the same way as the Disputed Limitation: "the wig grip apparatus terminates at the

10  forward periphery," construed by the Court to mean "the forward periphery of the

11  mesh element is the most forward portion of the wig grip apparatus."  [SUF# 41.]

12  Result.  The fact that, in both the claimed device and the Accused Device, at

13  least some portion of the forward periphery of the mesh element is free from any

14  opaque structure of the wig grip apparatus appearing directly in front of it, the forward

15  periphery of the mesh element in both apparatuses achieve the same desired effect

16  (i.e., result) of hiding the apparatus from view under the parting line of a wig.  The

17  forward periphery of the transparent mesh element, whether its forward periphery is

18  the most forward portion of the wig grip apparatus or is receded relative to the forward

19  edges of the securement members, it performs substantially the same function, in

20  substantially the same way, to achieve substantially the same result.  [SUF# 42.]

21  The equivalent in question also constitutes an "equivalent" to the Disputed

22  Limitation under the alternative "insubstantial difference" test.  For the same reasons

23  that the Accused Device meets the limitation "the wig grip apparatus terminates at the

24  forward periphery" under the function/way/result test for equivalency, a person of

25  ordinary skill in the art would likewise conclude that the receded forward periphery

26  of the mesh element relative to the forward edges of the securement members found

27  in Accused Device insubstantially differs from the structure described in this claim

28  limitation.  [SUF# 43.]

1   Being that the Accused Device possesses each and every element of claims 1,

2   2, 10, 11, 14, 20, and 21 of the '159 patent (literally or under the doctrine of

3   equivalents), Defendants directly infringe upon these claims.

4   C.   Defendants practice the method of using the Accused Device, thereby

5        infringing the asserted claims of the '477 patent

6   As set forth above, with regard to claims 1 and 2 of the '477 patent, with the

7   exception of the Disputed Limitation, Defendants admit that they practice each

8   limitation of the claimed methods.  [See SUF ## 28 through 34.]

9   And, being that these claims recite a method of using the Accused Device, for

10  the same reasons set forth above with regard to the '159 Patent (in Section IV.B.2),

11  because the equivalent to the Disputed Limitation is present in the Accused Device

12  under the doctrine of equivalents, Defendants infringe upon claims 1 and 2 of the '477

13  patent. (See also SUF ## 35 through 43.)

14  Accordingly, because Defendants practice each end every limitation of method

15  claims 1 and 2 of the '477 patent, Defendants directly infringe upon those claims.

16  **V.   CONCLUSION**

17  For the forgoing reasons, the Court should grant summary judgment in favor

18  of Plaintiff on the issue of infringement set forth in Counts I and III of the Amended

19  Complaint.

20  DATED: February 21, 2023          FREEMAN, FREEMAN & SMILEY, LLP

21

22

23                                    By: _____

24                                    WILLIAM E. ADAMS
                                      MARK B. MIZRAHI
25                                    Attorneys for Plaintiff NG Imports, LLC

26

27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

5697602.2 27421-831

PLAINTIFF NG IMPORTS, LLC'S MOTION FOR SUMMARY JUDGMENT FOR INFRINGEMENT