WILLIAM E. ADAMS (BAR NO. 153330)
william.adams@ffslaw.com
MARK B. MIZRAHI (BAR NO. 179384)
mark.mizrahi@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Plaintiff NG IMPORTS, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| NG IMPORTS, LLC, a California limited liability company,<br><br>                Plaintiff,<br><br>        vs.<br><br>CREATEDHAIR DESIGNS, LLC, a California limited liability company, et al.,<br><br>                Defendants. | Case No. 2:21-CV-08086-JAK-RAO<br><br>**PLAINTIFF NG IMPORTS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>[Complete List of Opposition Papers:<br>1) Memorandum of Points and Authorities;<br>2) Statement of Genuine Disputes;<br>3) Additional Uncontroverted Facts;<br>4) Declaration of Erin Lunsford;<br>5) Declaration of Yehudis Geisinsky;<br>6) Declaration of Mark B. Mizrahi;<br>7) Notice of Lodging Exhibit D; and<br>8) Motion to Exclude Expert Opinion.]<br><br>**The Hon. John A. Kronstadt**<br><br>Date: March 27, 2023<br>Time: 8:30 AM<br>Crtrm: 10B, First Street Courthouse<br><br>Trial Date:      None Set |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1
2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

3    I.    INTRODUCTION .................................................................................. 1

4    II.   DEFENDANTS FAIL TO DEMONSTRATE ENTITLEMENT TO
          SUMMARY JUDGMENT ON THE UTILITY PATENTS-IN-SUIT............. 2
5
          A.    The Equivalent in Question. ...................................................... 2
6
          B.    Plaintiff Successfully Rebuts the Presumption of Prosecution
7                History Estoppel, Thereby Entitling Plaintiff to Rely on the DOE. ....... 3

8                1.    The Walsh Prior Art Reference. .................................... 4

9                2.    Addition of the Disputed Limitation based on the Walsh
                       Reference. .................................................................... 4
10
          C.    Defendants Infringe the Utility Patents-in-Suit. ......................... 9
11
                1.    It's undisputed that, except for the Disputed Limitation, all
12                     limitations of the asserted claims of the '159 patent are
                       literally present. ........................................................ 9
13
                2.    The Accused Device meets the Disputed Limitation under
14                     the DOE. ...................................................................... 10

15                     a.    Application of the DOE to the Disputed Limitation ........ 12

16                3.    Defendants practice the method of using the Accused
                       Device, thereby infringing the asserted claims of the '477
17                     patent........................................................................... 15

18   III.  DEFENDANTS FAIL TO DEMONSTRATE ENTITLEMENT TO
          SUMMARY JUDGMENT OF NON-INFRINGEMENT OF  THE
19        DESIGN PATENT-IN-SUIT. ........................................................... 16

20        A.    Applicable Legal Authority ..................................................... 16

21        B.    Defendants' infringement analysis fails, as it is not applied from
                the vantage point of the "ordinary observer". ......................... 19
22
          C.    The Accused Design and the claimed design are not "plainly
23              dissimilar" ............................................................................. 20

24   IV.   CONCLUSION ................................................................................. 25

25
26
27
28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Amini Innovation Corp. v. Anthony California, Inc.*,
    439 F.3d 1365 (Fed. Cir. 2006) ..........................................................16, 17, 18, 20

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020) ......................................................................... 11

*Capbran Holdings, LLC v. Firemall LLC*,
    No. CV1602980DSFAFMX, 2017 WL 4769434 (C.D. Cal. Aug. 23,
    2017) ...............................................................................................................17

*CH2O, Inc. v. Meras Eng'g, Inc.*,
    Case No. 13-cv-08418 JAK, 2017 WL 11631638 (C.D. Cal. July 13,
    2017) ................................................................................................................. 3

*Columbia Sportswear North America, Inc. v. Seirus Innovative
    Accessories, Inc.*,
    942 F. 3d 1119 (Fed. Cir. 2019) .........................................................................24

*Crocs, Inc. v. International Trade Com'n*,
    598 F. 3d 1294 (Fed. Cir. 2010) ...................................................................16, 18

*Dexas Int'l Ltd. v. Tung Yung Int'l Inc.*,
    No. 6:07cv334, 2008 WL 5773608 (E.D. Tex. Oct. 14, 2008).........................24

*Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*,
    998 F.3d 917 (Fed. Cir. 2021) .......................................................................... 11

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d at 678-679 ..........................................................17, 18, 19, 21, 24

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) .......................................................................................3, 5

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki*,
    344 F. 3d 1359 (Fed. Cir. 2003) ........................................................................3, 4

*Gorham Mfg. Co. v. White*,
    81 U.S. 511, 20 L. Ed. 731 (1871) .................................................................17, 19

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
    339 U.S. 605 (1950) ................................................................................... 19

*Insituform Technologies, Inc. v. CAT Contracting, Inc.*,
    385 F.3d 1360 (Fed. Cir. 2004) ................................................................. 8

*Insituform Technologies, Inc. v. CAT Contracting, Inc.*,
    385 F.3d at 1370–71 ................................................................................... 9

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993) ......................................................... 16, 24

*Lee v. Dayton-Hudson*,
    838 F.2d 1186 (Fed. Cir. 1988) ......................................................... 19, 25

*Merchsource, LLC v. Sakar Int'l, Inc.*,
    No. SACV131577AGJPRX, 2015 WL 12711239 (C.D. Cal. Feb. 17,
    2015) .................................................................................................... 16, 17

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ............................................................... 16

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ........................................................... 17, 18

*Spigen Korea Co. v. Ultraproof, Inc.*,
    955 F.3d 1379 (Fed. Cir. 2020) ............................................................... 16

*Temco Electric Motor Co. v. Apco Manufacturing Co.*,
    275 U.S. 319 (1928) ................................................................................. 11

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

iii

# I. **INTRODUCTION**

Defendants have moved this Court for a summary judgment determination of non-infringement on the basis of three *primary* arguments:  First, Defendants argue that they cannot be held to have infringed Plaintiff's utility patents – US. Patent Nos. 10,881,159 (the "'159 patent") and 10,945,477 (the "'477 patent") (the "Utility Patents-in-Suit") – under the doctrine of equivalents ("DOE") because "prosecution history estoppel" precludes a finding of infringement.  Second, even if the DOE applies, the Accused Device lacks the equivalent in question.  Third, Defendants argue that they cannot infringe Plaintiff's design patent – D879,382 (the "Design Patent-in-Suit") – because the overall design of the accused product is so "plainly dissimilar" as to warrant a finding of non-infringement as a matter of law.  For the following reasons, these arguments lack merit and therefore summary judgment must be denied.

As to the Utility Patents-in-Suit, the Court issued its Order Regarding Claim Construction, as to the single disputed claim term, namely, "<u>the wig grip apparatus terminates at the forward periphery</u>" (the "Disputed Limitation"), construing that term to mean: "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus."  This is the only claim term in dispute between the parties.

Defendants categorically contend that merely because the Disputed Limitation was added in order to overcome a §102 (anticipation) prior art reference and was subject to clarification under §112 (indefiniteness) that Plaintiff is estopped from advancing any range of equivalents for that limitation.  That position, however, is a direct odds with controlling legal authority promulgated by the U.S. Supreme Court, namely, that narrowing amendments are subject to a *rebuttable* presumption by, *e.g.*, showing that the rationale underlying the amendment adding the Disputed Limitation bore no more than a "tangential relation" to the equivalent in question.  As demonstrated below, Plaintiff succeeds in rebutting the presumption of estoppel.

Defendants also mischaracterize the equivalent in question present in Defendants' Crystal WigSECURE wig grip apparatus (the "Accused Device") in

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  support of their contention that it does not meet the Disputed Limitation. When the
2  equivalent in question is properly characterized and compared to the Disputed
3  Limitation, however, infringement will be found; therefore, Defendants fail to
4  demonstrate entitlement to summary judgment on the issue of equivalence.

5  With regard to the Design Patent-in-Suit, Defendants illegitimately seek to
6  usurp the role of the trier of fact by asking this Court to find the absence of genuine
7  issues of material fact on the issue of infringement, despite the fact that genuine issues
8  remain to be determined by the trier of fact. Design patent infringement is evaluated
9  in the eyes of the "ordinary observer," and, in stark contrast to Defendants and their
10 expert, Plaintiff and its expert demonstrate that, in the eyes of the "ordinary observer,"
11 at the very least, genuine issues of material fact exist on the issue of infringement and
12 preclude the resolution of this issue on summary judgment.

13  **II.  DEFENDANTS FAIL TO DEMONSTRATE ENTITLEMENT TO**
14  **SUMMARY JUDGMENT ON THE UTILITY PATENTS-IN-SUIT.**
15  **A.  The Equivalent in Question.**

16  The "Equivalent in Question" is directly relevant to determining both whether
17 Plaintiff successfully rebuts the presumption of prosecution history estoppel vis-à-vis
18 the applicability of the DOE to the Disputed Limitation and whether that equivalent is
19 present in the Accused Device. The Equivalent in Question comprises a forward
20 periphery of a mesh element (132) in a wig grip apparatus that is receded relative to a
21 hypothetical extended boundary line aligned with the forward edges (126) of the
22 securement members (108, 114) and lacks opaque elements of the apparatus spanning
23 the width of the forward periphery. The absence of opaque structures in front of the
24 forward periphery and the transparency of the mesh allows the mesh element to be
25 aligned with the part-line in a transparent mesh wig, thereby hiding the presence of the
26 wig grip apparatus under the wig to conceal the fact that a person is wearing a wig.
27 The reference numbers correspond with those in FIG. 1 of the Utility Patents-in-Suit
28 annotated below to show the key claim terms and features.



FIG. 1

**B.**  **Plaintiff Successfully Rebuts the Presumption of Prosecution History Estoppel, Thereby Entitling Plaintiff to Rely on the DOE.**

Defendants argue that the prosecution history conclusively estops Plaintiff from utilizing the DOE to demonstrate infringement. Defendants' overly-simplified argument, however, utterly ignores the fact that the Supreme Court carefully set forth specific factors to be considered in determining whether a patentee may *rebut* the presumption of prosecution history estoppel, even in cases where the claim term at issue was amended or added to overcome §102 prior art and/or to clarify a claim under §112. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002) ("Festo II").  Indeed, a patentee may rebut the presumption of surrender by, *e.g.*, showing that the rationale underlying the amendment bore no more than a "tangential relation" to the equivalent in question. *Id.* at 740-41. Whether prosecution history estoppel applies, and hence whether the DOE may be available for a particular limitation, presents a *question of law* to be determined by the court. *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F. 3d 1359, 1367-1368 (Fed. Cir. 2003) ("Festo III").

The inquiry into whether a patentee can rebut the *Festo* presumption under the "tangential" criterion focuses on the patentee's objectively apparent reason for the narrowing amendment. *CH2O, Inc. v. Meras Eng'g, Inc.*, Case No. 13-cv-08418 JAK (GJSx), 2017 WL 11631638 *6 (C.D. Cal. July 13, 2017) (citing *Festo III*).

The Inventors added the precursor to the Disputed Limitation – *i.e.*, "the wig grip apparatus lacks non-transparency beyond the forward periphery" – in an August 5, 2000 amendment to overcome USPN 5,265,280 issued to Walsh ("Walsh"), cited as §102 prior art by the USPTO in the Office Action dated June 12, 2020. [Plaintiff's

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Statement of Additional Uncontroverted Facts ("SAF") # 30, 32.] Thus, this
2  amendment comprises a narrowing amendment which gives rise to a *rebuttable*
3  presumption of surrender of the DOE for that limitation. *Festo III*, at 1365.

4      An objective view of the file history, however, demonstrates that the patentee's
5  objectively apparent reason for the narrowing amendment bears no more than a
6  tangential relation to the Equivalent in Questions, something that was not addressed
7  by the primary prior art reference (Walsh) or the Disputed Limitation. Consequently,
8  Plaintiff successfully rebuts that presumption and may avail itself of the DOE. *Id*.

9      **1.    The Walsh Prior Art Reference.**

10      In a June 12, 2020 Office Action, the Examiner cited to Walsh as a §102 prior
11  art reference, depicted below (and annotated in red font) for the Court's convenience:



20  [SAF #30.] Walsh disclosed a facemask containing a transparent mesh affixed to first
21  and second inboard portions, bounded by opaque cording (shown above). [SAF #31.]

22      **2.    Addition of the Disputed Limitation based on the Walsh Reference.**

23      Thereafter, on or about August 5, 2020, the Inventors submitted claim
24  amendments and arguments in their Reply to Non-Final Office Action, including by
25  adding a limitation that further distinguished the claims over Walsh. Specifically, the
26  Inventors added the following limitation to overcome Walsh: "the wig grip lacks non-
27  transparency beyond the forward periphery." [SAF# 32.]

28      This amendment was directed to overcome Walsh, which disclosed a facemask

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   with opaque cording in front of the forward (and rearward) periphery of the mesh

2   element, by specifying that no non-transparent cording (or other opaque structure of

3   the apparatus) appears directly <u>in front</u> of the entire forward periphery of the mesh

4   element; hence, the Inventors' proposed amendment to overcome Walsh, namely, that

5   "the wig grip apparatus lacks non-transparency beyond the forward periphery."

6   [SAF## 32-33.]   The Inventors and Examiner understood this and came to an

7   agreement on how this same limitation ought to be expressed (more clearly in the

8   Examiner's eyes), namely, that "the wig grip apparatus terminates at the forward

9   periphery."  [SAF# 34-35.]

10   In contrast, the Equivalent in Question relates to a completely different

11   structural limitation.  That is, the Walsh reference and the claim amendment relate to

12   what occurs directly in front of the forward periphery of the <u>mesh</u>, and <u>not</u> to the

13   Equivalent in Question, namely, the forward or rearward position of the forward

14   periphery relative to a hypothetical extended boundary line aligned with the forward

15   edges of the securement members.  [SAF## 31, 33-38.]  And the Examiner made clear

16   that her proposed amendment ("the wig grip apparatus terminates at the forward

17   periphery") was directed solely to <u>clarify</u> the language of the Inventors' amendment to

18   distinguish the claims from Walsh, which she characterized as "the closest prior art."

19   [SAF# 36.]  The Inventors' decision to accede to the Examiner's proposed clarifying

20   amendment – to the "wig grip apparatus terminates at the forward periphery" limitation

21   – must be considered in the context of Walsh and the associated file history statements,

22   all of which were directed to distinguishing the invention from the Walsh facemask

23   which had cording directly bordering in front of the entire expanse of the forward

24   periphery. *See Festo II*, 535 U.S. at 740–41

25   Notably, the Inventors' "objectively apparent reason for the narrowing

26   amendment" can be confirmed by their statements during prosecution, which confirm

27   that the "rationale underlying the [narrowing] amendment [bore] no more than a

28   tangential relation to the equivalent question" – here, that rationale was directed to

1  clarifying that the claimed wig grip apparatus lacked opaque structures appearing

2  directly in front of the entire forward periphery. [SAF## 32-33.]:

3  "In critical contrast, the elastic cording 20 in Walsh, which is provided to

4  allow 'the [mesh] covering to conform to the anatomy of the wearer

5  comfortably and securely' (Walsh, Col. 3 lines 7-9) are non-transparent

6  structures present beyond the peripheries of the mesh 24.   See, for

7  example, FIGS. 1, 1a, 3, 4 and 4 of Walsh.   Notably, including non-

8  transparency beyond the forward periphery of the transparent mesh would

9  frustrate the purpose of the instant invention."

10  For sake of clarity, Plaintiff has reproduced below the referenced Fig. 3 from Walsh

11  and annotated it in red font to graphically illustrate the Inventors' Remarks, above.



FIG. 3 from Walsh

"elastic cording 20" = "non-transparent structures present beyond the peripheries of the mesh 24"

"peripheries of the mesh"

20  Thus, nothing stated by the Inventors in the file history can reasonably be

21  interpreted as a surrender of claim scope covering the Equivalent in Question, namely,

22  embodiments where the forward periphery is receded relative to the forward edges of

23  the securement members.  Indeed, there was no mention whatsoever by the Examiner

24  (who proposed the amendment) of the relative positioning, forward or rearward, of the

25  forward edges of the securement members relative to the forward periphery of the

26  mesh element.  [SAF## 34-37.]  This stands to reason, as nothing in Walsh – the only

27  cited prior art in support of the Examiner's amendment – precludes the Inventors'

28  claimed wig grip apparatus from having the mesh element be receded relative to the

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

6

forward edges of the securement members.  [SAF# 38.]

Because the mesh element of the claimed wig grip apparatus is intended to hide the apparatus from view under a part line of a lace foundation wig or hairpiece [SAF# 39], naturally, having a nontransparent structure in front of the entire forward periphery of the mesh would frustrate that purpose.  In a lace foundation wig, the hairs of the wig are attached to a substantially transparent foundation, such that once a part line is created in the wig, the scalp of the wearer is visible.  [SAF# 40.]  So, as the Inventors stated in the August 5, 2020 Reply to Office Action (quoted above) in reference to the amendment to overcome the Walsh reference, "including non-transparency beyond the forward periphery of the transparent mesh would frustrate the purpose of the instant invention."  [SAF# 41.]

To graphically illustrate this, Plaintiff sets forth Figure 1 from the Utility Patents-in-Suit on the left, where "the wig grip apparatus lacks non-transparency beyond the forward periphery [of the mesh]" (in the Inventors' words) and a hypothetical Figure 1 where, as in Walsh, the apparatus possesses non-transparent cording beyond – in a sense of in front of – the forward periphery of the mesh.  Both the Inventors' initial amendment and the amendment proposed by the Examiner (as construed by the Court) exclude the design depicted on the right, below.



| Actual Fig. 1 of '159 patent in accordance with the invention (avoiding Walsh) | Hypothetical Fig. 1 of '159 patent that reads on Walsh and frustrates purpose |

Notably, although the Court's construction interprets the claim limitation – "the wig grip apparatus terminates at the forward periphery" more narrowly than was necessary to overcome the Walsh reference, the file history makes clear that the Inventors only surrendered equivalents relating to cording or other opaque structures appearing in front of the entire forward periphery of the mesh (ala Walsh), not devices

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  comprising a mesh element where the forward periphery is receded relative to the

2  forward edges of the securement members – the Equivalent in Question.  [SAF# 38.]

3  And as Defendants' principal, Ms. Gibson, confirms in her Declaration, having a

4  receded mesh does not frustrate the object of having the apparatus hidden from view

5  under a wig, including along the parting line of a lace wig.  [SAF# 65.]

6        As such, Plaintiff is not barred from asserting that wig grip apparatuses with the

7  forward periphery of the mesh element set back from the forward edges of the

8  securement members (without opaque structures of the apparatus occluding the entire

9  forward periphery) are equivalent to the Disputed Limitation where "the forward

10  periphery of the mesh element is the most forward portion of the wig grip apparatus."

11  Thus, the narrowing amendment can only be said to have a "tangential relation" to the

12  equivalent at issue – namely, a wig grip apparatus with the forward periphery receded

13  relative to the forward edges of the securement members.  [SAF# 42.]

14        The facts of this case are highly similar to that of *Insituform Technologies, Inc.*

15  *v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004), where the Federal Circuit

16  found a claim amendment only tangentially related to the asserted equivalent, and

17  therefore overcame the presumption of total surrender. In that case, the asserted claim

18  was directed to a process of repairing cracked sewer pipes by installing a liner in the

19  pipe without removing the pipes from the ground. The asserted claim recited the use

20  of "a cup" to apply a vacuum to the pipe. Under these facts, the Federal Circuit had

21  construed the claim to be limited to a single cup in a previous opinion. The accused

22  process used multiple cups, and therefore did not literally infringe. The district court

23  found, however, that the multiple cup process did infringe under the DOE.  After

24  considering the prosecution history, the Federal Circuit affirmed and ruled that no

25  prosecution history estoppel applied because the narrowing amendment to the claims

26  (specifying "a cup") was only tangentially related to the assertion of multiple cups as

27  equivalents, noting that the applicant never stated to the Examiner that the problem it

28  solved could not be solved by using multiple vacuum sources. *Id*. at 1368–71.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    Likewise, here, the question this Court must address is "whether the reason for

2  the narrowing amendment was peripheral, or not directly relevant, to the alleged

3  equivalent." As demonstrated above, the narrowing amendment in this case was for

4  the purpose of distinguishing the invention over Walsh – a facial mask with opaque

5  cording bordering the peripheries of the mesh element of the mask.  The Inventors

6  made this clear through their Remarks accompanying their claim amendment

7  intended to overcome the Walsh reference. [SAF## 32-33.]  There is no indication in

8  the prosecution history of any relationship between the narrowing amendment "the

9  wig grip apparatus terminates at the forward periphery" and a wig grip apparatus

10  where the forward periphery of the mesh is receded relative to the forward edges of

11  the securement members – the alleged equivalent in this case.

12    Therefore, nothing in the file history can reasonably be interpreted as a surrender

13  of claim scope precluding an embodiment, where the forward periphery is receded

14  relative to the forward edges of the securement members, from being an equivalent to

15  the Disputed Limitation.  [SAF## 30-41.]

16    Thus, the amendment narrowing the claimed invention to a "wig grip apparatus

17  [that] terminates at the forward periphery" (construed by the Court to mean that "the

18  forward periphery of the mesh is the most forward portion of the wig grip apparatus")

19  has only a tangential relation to the equivalent feature of the Accused Device, which

20  has the forward periphery of the mesh element receded relative to the forward edges

21  of the securement members.  *Insituform Technologies, Inc. v. CAT Contracting, Inc.*,

22  385 F.3d at 1370–71. Because the rationale underlying the amendment adding the

23  Disputed Limitation bore no more than a tangential relation to the equivalent in

24  question, Plaintiff may employ the DOE with respect to that limitation.  [SAF# 42.] At

25  a minimum, applicability of prosecution history estoppel presents triable issues of

26  material fact that cannot be overcome on summary judgment.

27  **C.    Defendants Infringe the Utility Patents-in-Suit.**

28    **1.    It's undisputed that, except for the Disputed Limitation, all**

9

**limitations of the asserted claims of the '159 patent are literally present.**

Defendants admit that the Accused Device literally possesses each and every element of the Asserted Claims, except for the Disputed Limitation construed by the Court, namely, "the wig grip apparatus terminates at the forward periphery." (See SAF## 43-49.)  As demonstrated, below, the Disputed Limitation, too, is met by the Accused Device under the DOE.

**2.  The Accused Device meets the Disputed Limitation under the DOE.**

Thus, whether the Accused Device infringes the asserted claims of the '159 patent hinges upon whether the Disputed Limitation ("the wig grip apparatus terminates at the forward periphery") is met by the Equivalent in Question in the Accused Device under the DOE.  As demonstrated below, it does.

As discussed below, this is true even under the Court's construction of that limitation, namely, "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus."  The Equivalent in Question relates to a forward periphery of the transparent mesh element that, as in the Accused Device, is receded relative to the forward edges of the securement members.

Defendants engage in mental gymnastics in a futile attempt to avoid infringement by mischaracterizing the Equivalent in Question, claiming that the Accused Device "does not have any structure between the bands at the 'most forward' portion of the wig band.  It's open on both the top and bottom edges." (Defendants' Memo, at 6:14-16.) Defendants go on to argue that "When there is nothing, however, there can be no analysis as a required structure at the most forward edge – the precise limitation added by amendment – is missing" (*Id*. at 6:23-7:2) and "The Accused Product has nothing at 'the most forward portion of the wig grip apparatus' that performs the same function in the same way to provide the same result."  This amounts to the same thing as saying that "our mesh is smaller than your mesh, so we don't infringe." (*Id*. at 7:2-4.)  This argument, however, utterly misses the point.

10

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    "Courts should be cautious not to shortcut this inquiry by identifying a 'binary'

2    choice in which an element is either present or 'not present.'" *Bio-Rad Labs., Inc. v.*

3    *10X Genomics, Inc.*, 967 F.3d 1353, 1368 (Fed. Cir. 2020) (limiting question of

4    infringement under DOE to a "binary choice between 'flourinated' and 'non-

5    flourinated' microchannels" was improper where a reasonable juror could have found

6    negligibly-flourinated microchannel performed substantially the same function).  The

7    Court should therefore evaluate the evidence to determine whether a reasonable juror

8    could find that the equivalent in question performs substantially the same function, in

9    substantially the same way, to achieve substantially the same result. *Edgewell*

10   *Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 924 (Fed. Cir. 2021).[1]

11        Here, the issue to be decided is *whether* a wig grip apparatus with a transparent

12   mesh element with a forward periphery – being free from other elements of the

13   apparatus appearing directly in front of the entire forward periphery – that is receded

14   relative to a hypothetical line across the forward edges of the securement members

15   (the Equivalent in Question) is equivalent in function/way/result to a wig grip

16   apparatus where the forward periphery of the transparent mesh element is the "most

17   forward portion of the wig grip apparatus."  As further discussed below, in the claimed

18   apparatus – where the "forward periphery is the most forward portion of the wig grip

19   apparatus" resulting in a forward periphery that lacks any other portion of the wig grip

20   apparatus appearing in front of the entire forward periphery) – the mesh element

21   performs the function of providing transparency along the part-line of a wig.    [SAF#

22   60.] This conforms to the object of the invention and likewise distinguishes the

23   inventions of the asserted claims from the Walsh reference, as discussed above.

24

25   _____

     [1] At best, Defendants' argument amounts to an allegation that the Accused Device

26   contains an additional feature not present in the asserted claims that purportedly
     enhances its function vis-à-vis the inventions of the asserted claims.  It is

27   fundamental, however, that one cannot avoid infringement merely by adding
     elements if each element recited in the claims is found in the accused device. *See*

28   *Temco Electric Motor Co. v. Apco Manufacturing Co.*, 275 U.S. 319, 328 (1928).

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Likewise, in the Accused Device, the forward periphery (although receded relative to the forward edges of the securement members) similarly lacks any other portion of the wig grip apparatus appearing in front of the entire forward periphery, such that the mesh element also performs the function of providing transparency along the part-line of a wig in the same way as the claimed limitation. [SAF# 57.]

Therefore, the question is whether a mesh element where "the forward periphery is the most forward portion of the wig grip apparatus" (as in the claimed apparatuses) is equivalent to a mesh element where the forward periphery is receded relative to the forward edges of the securement members of the apparatus, where that forward periphery is also free from other portions of the apparatus appearing directly in front of that forward periphery. For the reasons stated below, the answer is "yes."

### a.   Application of the DOE to the Disputed Limitation

Both the claimed apparatuses and the Accused Device have a transparent mesh element with a forward periphery that perform the same function, namely, concealing the presence of the wig grip apparatus along the part-line beneath a lace foundation wig. [SAF# 57.] The way the Accused Device and the claimed wig grip apparatuses perform the function of obscuring the presence of the wig grip apparatus along the part-line of the wig is the same. [SAF# 58.] The result is also the same. [SAF# 63.] As demonstrated below, this is not only true when looking at the claimed device and the Accused Device as a whole, but also specifically with respect to the Disputed Limitation. For the Court's convenience, Plaintiff sets forth below a photo of the Accused Device annotated to show the <u>receded</u> mesh relative to the hypothetical line across the forward edges of the securement members (*see*, Exh. I to Mizrahi Decl.):



<u>Function</u>. The forward periphery of the mesh in both the claimed apparatuses

and the Accused Device perform the same function, whether it is "the most forward portion of the wig grip apparatus" or is receded relative to the hypothetical line drawn across the forward edges of the securement members.  [SAF# 57.]  Notably, both the claimed apparatuses and the Accused Device possess a mesh element having a forward periphery, where at least some portion of the forward periphery is free from any other elements of the apparatus appearing directly in front of it, which allows the apparatuses to be hidden from view under the hair parting-line of a lace foundation wig.  [Id.]  This can be readily seen by reference to the photographs and video of the Accused Device in Exhibits D and F to the Mizrahi Decl.  It is also the case with the Disputed Limitation, as that claim term makes clear that, among other things, no part of the apparatus appears in front of the forward periphery of the mesh, as evidenced by the language of this limitation: "the wig grip apparatus terminates at the forward periphery."   It is also evident from the Court's interpretation of the Disputed Limitation, namely, "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus."  Obviously, if "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus," then it is free from other elements of the apparatus appearing directly in front of it.  (As discussed above, this is what distinguishes the claimed apparatuses from Walsh.)  [SAF## 33, 59.]

This allows the transparent mesh elements in the asserted claims and Accused Device to perform the same *function* of hiding the presence of the wig grip apparatus under the part line of a transparent lace foundation wig, as, were other elements of the wig grip apparatus situated in front of the entire forward periphery, then it would frustrate the purpose of the invention: to hide the presence of the wig grip apparatus under the part-line of a lace foundation wig.  This is true whether the forward periphery of the mesh is "the most forward portion of the wig grip apparatus" or receded relative to the forward edges of the securement members. [SAF# 60.]

<u>Way</u>.  The way the Accused Device and the claimed wig grip apparatus perform the function of hiding the presence of the wig grip band along the parting line of the

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

13

wig/hairpiece is also identical.  In both in the accused and claimed apparatuses, the transparent mesh element can be aligned with the hair parting line of the lace foundation wig/hairpiece to hide the presence of the wig band beneath the wig/hairpiece, as both apparatuses lack any opaque element of the apparatus appearing in front of the entire forward periphery of the mesh element.  This is true whether or not the forward periphery of the mesh element in the claimed device is the most forward portion of the wig grip apparatus relative to the forward edges of the securement members on either side of the mesh (applying the Court's construction) or whether the forward periphery is receded relative to the forward edges of the securement members (as is the case with the Accused Device).   [SAF# 58.]

That is, despite the fact that the forward periphery of the mesh in the Accused Device is receded relative to the hypothetical line drawn across the forward edges of the securement members – thereby leaving an absence of any material of the apparatus directly in front of the forward periphery of the mesh – the fact remains that the mesh element in the Accused Device is transparent and lacks cording or other opaque structures directly in front of the entire expanse of the forward periphery of the mesh. This facilitates the mesh portion of the Accused Device being transparent when placed under the part-line of a wig.  Were this not the case, then the Accused Device would be visible under the parting line of the wig when worn under a lace foundation wig. Therefore, the mesh element and its forward periphery perform the same function in the same way as the Disputed Limitation: "the wig grip apparatus terminates at the forward periphery," construed by the Court to mean "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus."  [SAF# 60.]

Result.  Being that, in both the claimed device and the Accused Device, at least some portion of the forward periphery of the mesh element is free from any opaque structure of the wig grip apparatus appearing directly in front of it, the forward periphery of the mesh in both apparatuses achieve the same desired effect (*i.e.*, result) of hiding the apparatus from view under the parting line of a wig. [SAF# 61.]  The

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

14

forward periphery of the transparent mesh element, whether its forward periphery is the most forward portion of the wig grip apparatus or is receded relative to the forward edges of the securement members, performs substantially the same function, in substantially the same way, to achieve substantially the same result.  [SAF## 62, 63.]

In addition, the Equivalent in Question also constitutes an "equivalent" to the Disputed Limitation under the alternative "insubstantial difference" test.  For the same reasons that the Accused Device meets the limitation "the wig grip apparatus terminates at the forward periphery" under the function/way/result test for equivalency, a person of ordinary skill in the art would likewise conclude that the receded forward periphery of the mesh element relative to the forward edges of the securement members found in Accused Device insubstantially differs from the structure described in this claim limitation.  [SAF# 64.]

Being that the Accused Device possesses each and every element of claims 1, 2, 10, 11, 14, 20, and 21 of the '159 patent (literally or under the doctrine of equivalents), Defendants directly infringe upon these claims.

### 3. Defendants practice the method of using the Accused Device, thereby infringing the asserted claims of the '477 patent

As set forth above, with regard to claims 1 and 2 of the '477 patent, with the exception of the Disputed Limitation, Defendants admit that they practice each limitation of the claimed methods.  (See SAF ## 50 through 56.) And, being that these claims recite a method of using the Accused Device, for the same reasons set forth above with regard to the '159 Patent (in Section C.2), because the equivalent to the Disputed Limitation is present in the Accused Device under the DOE, Defendants infringe upon claims 1 and 2 of the '477 patent. (See also SAF ## 57 through 64.)

Accordingly, because Defendants practice each end every limitation of method claims 1 and 2 of the '477 patent, Defendants directly infringe upon those claims. Therefore, Defendants motion for summary judgment should be denied.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## III. DEFENDANTS FAIL TO DEMONSTRATE ENTITLEMENT TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE DESIGN PATENT-IN-SUIT.

### A. Applicable Legal Authority

Summary Judgment Design.  Design patent infringement is a question of fact, which a movant must prove by a preponderance of the evidence.  *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1124 (Fed. Cir. 1993).  Therefore, it is not well suited for summary judgment.  To fend off summary judgment, the non-movant need only show that one or more of the facts is "genuinely in dispute" and is material to the judgment.  *Amini Innovation Corp. v. Anthony California, Inc*., 439 F.3d 1365, 1368 (Fed. Cir. 2006).  In determining whether there is a genuine issue of material fact, the evidence must be viewed in a light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent.  *OddzOn Prod., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1401 (Fed. Cir. 1997).

Claim Construction.  The scope of the claim encompasses the design's visual appearance as a whole and in particular the visual impression it creates.  *Crocs, Inc. v. International Trade Com'n*, 598 F. 3d 1294, 1302-1303 (Fed. Cir. 2010).  Unlike utility patent, designs are claimed according to the design patent drawings.  *Id.* Taking into account all figures in the patent, one must consider all of the visual features of the design patent as a whole and not merely isolated portions or individual features of the claimed design. *Amini Innovation Corp. v. Anthony California, Inc*., 439 F.3d 1365, 1372 (Fed. Cir. 2006).  All matter depicted in solid lines contributes to the overall appearance of the design.  *Spigen Korea Co. v. Ultraproof, Inc*., 955 F.3d 1379, 1381 n.1 (Fed. Cir. 2020)  Any features shown in broken lines in the drawings of the design patent are excluded from the claimed design.  *Merchsource, LLC v. Sakar Int'l, Inc.*, No. SACV131577AGJPRX, 2015 WL 12711239, at *2 (C.D. Cal. Feb. 17, 2015).  Failure to show features in broken lines signals inclusion of such features in the claimed design.  *Id*.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

16

1      The various features of the overall appearance of the design may perform a

2 function – that is the nature of an article of manufacture for which this design patent

3 has been granted. If such functional features are illustrated in solid lines, they are

4 part of the claimed design based on how they contribute to the overall visual

5 appearance. *Id*. The trier of fact must compare the claimed design as depicted in the

6 drawings to the accused device. *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998

7 F.2d 985, 990 (Fed. Cir. 1993).

8      <u>Infringement Test</u>. At the outset, conclusions about reasonable jurors are

9 difficult to make on an issue of this factual dimension. *Amini Innovation Corp. v.*

10 *Anthony California, Inc.*, 439 F. 3d 1365, 1371-1372 (Fed. Cir. 2006). Regardless,

11 the test for design patent infringement is whether the claimed design and the accused

12 device would appear "substantially the same" to the ordinary observer who is

13 conversant with the prior art. *Egyptian Goddess, Inc. v. Swisa*, Inc., 543 F.3d 665,

14 678 (Fed. Cir. 2008). That is, "if, in the eye of an ordinary observer, giving such

15 attention as a purchaser usually gives, two designs are substantially the same, if the

16 resemblance is such as to deceive such an observer, inducing him to purchase one

17 supposing it to be the other, the first one patented is infringed by the other." *Gorham*

18 *Mfg. Co. v. White*, 81 U.S. 511, 528, 20 L. Ed. 731 (1871).

19      In conducting a design patent infringement analysis, the patented design is

20 viewed in its entirety as it is claimed, and the court determines whether the effect of

21 the whole design, in the eye of the ordinary observer, is substantially the same as the

22 purported infringer's design. *Capbran Holdings, LLC v. Firemall LLC*, No.

23 CV1602980DSFAFMX, 2017 WL 4769434, at *5 (C.D. Cal. Aug. 23, 2017). That is,

24 to determine infringement, one must compare the *overall* appearances of the accused

25 design and the claimed design (using the construction/meaning of the claimed design).

26 *Merchsource, LLC v. Sakar Int'l, Inc.*, No. SACV131577AGJPRX, 2015 WL

27 12711239, at *1 (C.D. Cal. Feb. 17, 2015); *Egyptian Goddess,* 543 F.3d at 678.

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

PLAINTIFF NG IMPORTS, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT

1    Before conducting the infringement analysis, the trier of fact must familiarize

2    itself with each of the prior art designs that have been brought to its attention.  *Crocs,*

3    *Inc. v. International Trade Com'n*, 598 F. 3d at 1303.  In view of this prior art, if one

4    finds that, by a preponderance of evidence, the overall appearance of the accused

5    design is substantially the same as the overall appearance of the claimed design, then

6    the accused design infringes the design patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*,

7    543 F.3d at 678-679.  To infringe, the accused device need not be the same to the eye

8    of an expert, because no product would infringe under that test.  *Egyptian Goddess,*

9    *Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).

10    Even if the claimed design simply combines old features in the prior art, it may

11    still create an overall appearance deceptively similar to the accused design, and

12    therefore infringe.  *Id.* at 677-78. And deception that arises is a result of the

13    similarities in the overall design, not of similarities in ornamental features in

14    isolation. *Amini Innovation,* 439 F.3d at 1371.  In conducting this analysis, one must

15    keep in mind that minor differences between the patented and accused designs

16    should not prevent a finding of infringement. *Payless Shoesource*, 998 F.2d at 991.

17    One should consider and weigh any perceived similarities and differences.  *Id.*

18    In analyzing the Accused Device against the claimed design, in light of the

19    prior art, the following guidelines may be helpful to the trier of fact in analyzing

20    whether the accused and asserted designs are substantially the same in overall

21    appearance:  (1) When the claimed design is visually close to the prior art designs,

22    small differences between the accused design and the claimed design may be

23    important to the analysis; (2) If the accused design includes a particular feature of the

24    claimed design that departs conspicuously from the prior art, one may find the

25    inclusion of that feature important to one's analysis; and (3) If the accused design is

26    visually closer to the claimed design than it is to the closest prior art, one may find

27    this comparison important to one's analysis. *Egyptian Goddess, Inc. v. Swisa, Inc.*,

28    543 F.3d at 676.  While these guidelines may be help to the analysis, the sole test for

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

18

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1 infringement is whether the overall appearance of the accused design is substantially

2 the same as the overall appearance of the claimed design. *Id.* at 678. If one finds the

3 accused design is substantially the same, then the accused design infringes. *Id.*

4     <u>The claimed design is entitled to a scope of "equivalency"</u>. Despite

5 Defendants' suggestion to the contrary, like utility patent claim, design patent claims

6 are afforded scope beyond near identity of the accused device to the claimed design.

7 *Lee v. Dayton-Hudson*, 838 F.2d 1186, 1189-90 (Fed. Cir. 1988)("While the

8 way/function/result test of *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339

9 U.S. 605, 608 (1950) is not directly transferable to design patents, it has long been

10 recognized that the principles of equivalency are applicable under *Gorham*.")

11     <u>Who is the "ordinary observer"</u>. The parties agree that the "ordinary observer"

12 for the Accused Device are ordinary consumers of hair accessories. [SAF# 66.] But

13 that does not end the inquiry, as consumers of wig grip bands typically purchase

14 through online marketplaces, as they are one size fits all devices. [SAF# 67.] Even

15 when purchased through a physical location, however, being that they are ultimately

16 placed beneath the wig and hidden from view by outside observers, such devices are

17 not typically subjected to close visual inspection by the ordinary consumer. [SAF#

18 68.] Thus, being that the infringement test is measured from "the eye of an ordinary

19 observer, giving such attention as a purchaser usually gives…", it is unlikely that

20 small nuances between the Accused Device and the claimed design will be given

21 attention by the "ordinary observer." [SAF# 68.]

22 **B.**   **<u>Defendants' infringement analysis fails, as it is not applied from the</u>**
23     **<u>vantage point of the "ordinary observer".</u>**

24     Despite having cited extensively to case authority making clear that the design

25 patent infringement analysis must be determined from the "eye of the ordinary

26 observer," Defendants have failed provide any evidence (or argument for that matter)

27 that any of the alleged differences between the Accused Design and the claimed

28 design would be noted, let alone have any influence on, the "eye of the ordinary

19

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1    observer."  Neither the declaration of Defendants' expert, Bobbi Russell, nor the

2    declaration of Defendants' principal, Amy Gibson, provide any testimony or analysis

3    from the perspective of "the eye of an ordinary observer, giving such attention as a

4    purchaser usually gives…"  Rather, Defendants' memorandum and declarations

5    baldly list out trivial differences in isolation.

6         It is procedural error, however, to analyze each element separately instead of

7    analyzing the design as a whole *from the perspective of an ordinary observer.  Amini*

8    *Innovation Corp. v. Anthony California, Inc.*, 439 F. 3d 1365, 1372 (Fed. Cir. 2006).

9    For these reasons and the following, Defendants' motion should be denied.

10   **C.    The Accused Design and the claimed design are not "plainly dissimilar"**

11        Despite Defendants' arguments to the contrary, a comparison of the claimed

12   patent to the accused device shows that – in the eye of an ordinary observer, giving

13   such attention as a purchaser usually gives – the two designs are not "plainly

14   dissimilar" in the eye of the ordinary observer.  [SUF # 69-74.]  Indeed, a side-by-

15   side comparison of even one of the many views (Fig. 1), as set forth below, makes

16   quick work of that assertion.



22        In addition to not being plainly dissimilar, in the eye of an ordinary observer,

23   the overall appearance of the Accused Device is substantially the same as the overall

24   appearance of the claimed design.  At the very least, this case presents genuine issues

25   of material fact for the jury, making this issue inappropriate for resolution on

26   summary judgment.  *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d

27   1365, 1368 (Fed. Cir. 2006).

28        Under the "ordinary observer test," the question is whether, in the eye of the

ordinary observer conversant with the prior art, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other. *Egyptian Goddess, Inc. v. Swisa*, Inc., 543 F.3d at 678. Reference to the prior art is important because when differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art. *Id.*

The fact that the Accused Design is substantially the same in overall appearance to claimed design becomes especially evident when comparing the two designs with the prior art.  Like the claimed design, the Accused Design includes a centrally located substantially square shaped mesh element that is set back from the forward edges of the opaque straps, a feature that *departs conspicuously from the prior art* and represents one of numerous shapes of the mesh that could have been adopted.  [SAF # 69.] All in all, the Accused Design is visually closer to the claimed design than either of them is to the closest prior art, something that further supports the conclusion that the overall appearance of the accused design is substantially the same as the overall appearance of claimed design, as shown in the table set forth in the Lunsford Decl. on page 23.  [SUF ## 70-71.]

Defendants' list of trivial alleged differences does not change that.  The accused and asserted designs are to be compared in light of the prior art, which clearly shows that the Accused Device is much more similar to the asserted design than it is to any of the prior art bands.  [SUF # 70.] Defendants are asking this Court to review the issue of infringement <u>not</u> from the perspective of "ordinary observer," but from the "hypersensitive, overly scrutinizing observer" or expert standard, where the observer is expected to closely inspect every stitch of the two designs and to measure the distance at which the mesh elements are set back from the forward edges.  This is clearly neither the standard, nor otherwise reasonable.

The eye of the ordinary observer will be drawn to the features shared by

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

Accused Device and the claimed design, most notably, the substantially square, receded mesh element located substantially in the center of each band, among other features.  [SAF# 71.]  In fact, in many cases, because the Accused Device is essentially monochrome (as it is meant to be hidden by matching the skin tone of the wearer) and has a very shiny velour appearance, most of the alleged minor differences (*e.g.*, stitching details) listed by Defendants would be obscured from notice by the ordinary observer.  [SAF# 72.]  Although, in light of the foregoing, each of Defendants' six alleged variations ought to be given no credence, for sake of completeness, Plaintiff addresses each of the alleged variations in turn below.

First, Defendants contend that the mesh element in the two devices "is shaped and positioned differently," because in the Accused Device, the mesh is setback relative to both the forward and rear edges of the band, while the mesh element in the claimed design is only setback relative to the forward edges of the band.  The shapes of the mesh elements, however, are essentially identical.  [SAF# 73.]  And the fact that the rearward periphery of the mesh element in the Accused Device is set back from the rearward edges of the securement members would not be sufficient to distinguish the two apparatuses in the eye of the ordinary observer, because wig grip apparatuses, such as the Accused Device, are most concerned with what occurs in the front facing portion of the apparatus – the portion closest to the hairline; therefore, the ordinary observer would pay little attention to minor variations that occur at the rearward portion of the apparatus.  [SAF# 74.]  This is true, especially, considering that from all of the prior art, only the Accused device and the claimed design have substantially square mesh elements set back from the forward edges of the bands.  [SAF# 74.]

Second, despite Defendants' contentions, giving such attention as a purchaser usually gives, the "anti-stretch stitching" patterns in both the Accused Device and asserted design would be perceived as having the same overall visual appearance of small triangles located adjacent to the forward and rearward edges of the securement

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

members.  [SAF# 75.] The fact that the points of the triangles in the Accused Device do not touch represents a trivial difference.  [SAF# 75.]  With the extremely high sheen, monochrome velour material of the straps in the Accused Device, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, this alleged difference would be hardly noticeable.  [SAF# 75.]

Third, Defendants' assertion that the "top and bottom edge finishes are different" in the Accused Device and the claimed design also presents a trivial variation in the eyes of the ordinary observer, if it is noticed it all.  [SAF# 76.] Defendants concede that both the Accused Device and the claimed design exhibit a thickened stitched edge at the forward edge of the securement members.  [SAF# 80.] Defendants contend, however, that the stitching along the rearward edge of the Accused Device is thicker than the stitching along the rearward edge of the claimed design.  [SAF# 81.]  Even putting aside the fact that the monochrome and high sheen appearance of the Accused Device would obscure such subtleties, the fact is ordinary observers (purchasers) of wig grip apparatuses, such as the Accused Device, are most focused on what occurs in the front facing portion of the apparatus, as it is that portion that faces the hairline of the wig.  [SAF# 76.]  So, one would expect the ordinary observer to place its focus on the front edge of the device, such that minor variations that occur at the rearward portion of the apparatus will be given less attention, overall, by the ordinary observer.  [SAF# 76.]

Fourth, Defendants' claim that that the "connection finishes for the mesh or silk are different"; this also presents a trivial difference that is unlikely to be given any attention by the ordinary observer.   [SAF# 77.]  In <u>both</u> the Accused Device and the claimed design, the portions of the securement members at which the mesh element is stitched are opaque and thickened, significantly.  [SAF# 77.]  The slight stitching variations are just that – slight and unlikely to be noticed by the ordinary observer – especially considering that the typical purchaser purchases such products online and that they are hidden from view when worn.  [SAF# 77.]  And the very

23

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  minor curvature of the "connection finishes for the mesh" in the Accused Device

2  would likely be viewed by ordinary purchasers as an artifact of the stitching, as

3  opposed to design features, that is if the ordinary observer notices them at all.  [Id.]

4       Fifth, Defendants contend that the back side of the Accused Device is "broken

5  up with the strip of silicone."  The addition of the (notably transparent) "strip of

6  silicone running along the length" of the underside of the Accused Device would be

7  viewed by the ordinary observer as an additional functional feature added to the

8  band, and not given any notice by the ordinary observer as a distinguishing feature

9  from a design standpoint.  [SAF# 78.]  Because this feature is merely functional (it

10  adds additional anti-slip functionality special when worn on a bald head), as opposed

11  to ornamental, the ordinary observer would consider this an optional functional

12  feature and would no more consider this a distinguishing design feature than would

13  the addition of a sunroof to a car be considered a distinguishing design feature of a

14  car.  [SAF# 78.]  Regardless, the inclusion of an additional, functional feature may

15  be discounted by the trier of fact in applying the ordinary observer test.  *Dexas Int'l*

16  *Ltd. v. Tung Yung Int'l Inc.*, No. 6:07cv334, 2008 WL 5773608 *4-5 (E.D. Tex. Oct.

17  14, 2008).

18       Sixth, the addition of a label for branding purposes would also be factored out

19  by the ordinary observer when viewing the Accused Device, as most wig grip

20  apparatuses contain labels with branding indicia.  [SAF# 79.]  In addition, the

21  placement of a label on wig grip apparatuses is used to indicate the proper orientation

22  of the apparatus on the wearer's head.  [SAF# 79.]  Regardless, the Federal Circuit

23  has expressly held that "design infringement is not avoided 'by labeling.'"  *L.A.*

24  *Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993).  This was

25  reiterated in the case cited by Defendants in support of having their label serve as a

26  distinguishing feature, namely*, Columbia Sportswear North America, Inc. v. Seirus*

27  *Innovative Accessories, Inc.*, 942 F. 3d 1119, 1131 (Fed. Cir. 2019).  Therefore, this

28  alleged difference should be given no weight.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Regardless, as stated above, the Accused Device need not be identical to the
2 claimed design, as it has long been recognized that the principles of equivalency are
3 applicable to design patents. *Lee v. Dayton-Hudson*, 838 F.2d at 1189-90. For the
4 foregoing reasons, genuine issues of material fact remain with regard to the
5 determination of similarity in the eyes of the ordinary observer, precluding the
6 granting of summary judgment.

7  Citing *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 15
8 (Fed. Cir. 2015), Defendants argue that conceptual, high level similarities, e.g., that
9 both products are wig bands with mesh, do not establish infringement. *Id.* The
10 similarities between the Accused Device and the claimed design, however, are not
11 limited to conceptual, high-level similarities. They share specific and prominent
12 design details, such as a substantially square-shaped mesh element recessed from the
13 forward edges of the securement members in combination with numerous other
14 features including triangle-patterned stitching on the band, thickened stitching
15 joining the mesh to the securement members, among others. [SAF# 71-75.]

## IV.  CONCLUSION

17  Accordingly, for the foregoing reasons, Plaintiff contends that it is entitled to
18 summary judgment of infringement with regard to Counts I and II. At the very least,
19 genuine issues of material fact exist with regard to Counts I-III precluding a finding
20 of non-infringement at the summary judgment stage for Defendants.

22 DATED: March 3, 2023          FREEMAN, FREEMAN & SMILEY, LLP

24                         By:  */s/ Mark B. Mizrahi*
25                             WILLIAM E. ADAMS
26                             MARK B. MIZRAHI
                               Attorneys for Plaintiff NG Imports, LLC