ANNE WANG (CA BAR NO. 151000)
awang@lewisroca.com
DREW WILSON (CA BAR NO. 283616)
dwilson@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
655 North Central Avenue, Suite 2300
Glendale, California 91203-1445
Telephone: (626) 795-9900

LANCE G. JOHNSON (Admitted *Pro Hac Vice*)
lance@lgjlegal.com
JOHNSON LEGAL PLLC
12545 White Drive
Fairfax, Virginia 22030-6413
Telephone: (202) 445-2000
Facsimile: (888) 492-1303

Attorneys for Defendant
CREATEDHAIR DESIGNS, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NG IMPORTS INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CREATEDHAIR DESIGNS, LLC, a California limited liability company; and CREATEDHAIR, INC., a California corporation,<br><br>Defendants. | Case No.: 2:21-cv-08086-JAK-RAO<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>**Hearing Date: March 27, 2023**<br>**Time: 8:30 a.m.**<br>**Courtroom: 10B**<br>**First Street Courthouse**<br><br>**Hon. John A. Kronstadt** |

120450739.1

## I. INTRODUCTION

Nothing in Plaintiff's opposition (ECF 74 "Opp.") identifies a material fact in dispute as to the asserted claims in the '159/'477 utility patents or the '382 design patent that would preclude summary judgment in favor of Defendants.

## II. ARGUMENT

### A. Termination at the Forward Periphery Was Important for Allowance

Plaintiff's arguments under the doctrine of equivalents focus assert that the critical claim language added by amendment was only "tangentially related" to the equivalent in question. (Opp. at 3+.) Its analysis and arguments focus on the Walsh reference which was cited for a rejection based on lack of novelty under 35 USC § 102. Walsh was not, however, the only grounds for a rejection of the claims.

NGI does not discuss the examiner's rejections based on obviousness under 35 USC § 103, the proffered rejection for lack of clarity under 35 USC § 112 to the language proposed at the interview, or the limited disclosure scope of the application. Each of these is relevant to the why the added mesh location limitation became the basis for patentability and show why the claims required that transparent mesh be located at the most forward portion of the wig band. This limitation was not tangential: it was crucial.

Whether an amendment is "tangential" to an equivalent requires consideration of the role of the equivalent – here, the position of the mesh element – within the context of the rejections and arguments. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) ("Although we cannot anticipate the instances of mere tangentialness that may arise, we can say that an amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim.").

NGI's arguments regarding Walsh illustrate the point that the location of the end of the mesh was an important factor during prosecution. As Plaintiff notes,

the Walsh device has a cord around the perimeter. (Opp. at 4.) This means that the end of the mesh did not terminate the device. The cord terminated the device. The mesh stopped short of that at a location recessed from the outer edge of the device. The disputed claim language distinguished Walsh by requiring that the mesh extend all the way to the end of the device. This is a distinction for allowance that was based on the position of the mesh within the overall device.

The prosecution history shows that the Becker reference also did not disclose that the mesh should extend to the outer edge of the device. The mesh had an outer boundary. *See*

Dkt. No. 69-5, "Exh. 4" – 1st Action at NGI00065-66:

Becker does not specifically disclose that the central mesh element is transparent[,] and *the mesh element of Becker does not extend to the forward and rearward peripheries of the wig grip band* to align with the edges of the securement members. Since the wig grip band of Becker is worn between a traditional wig base and the user's scalp to facilitate securement of the wig onto the scalp, a user would want the central portion wig grip band to be transparent and not destroy the aesthetics and natural looking appearance of a front hairline and parting area.

The Becker patent had the mesh stop short of the outer edge of the device. Note the examiner's illustration in Exh. 4 at NGI00061:



The examiner went so far as to generate a drawing to show how it would have been obvious to align the transparent central mesh element of the wig band from Becker (Supplemental Decl. of Lance Johnson ¶ 2, Exh. 10 - US 5,806,535) with the hair parting line in the wig and extend from the forward periphery to the

rear edge. *See* Exh. 4 – 1st Action at NGI00067-68 (red lines to the original gray dots have been added for emphasis):

> In order for the wig grip as provided by Becker to facilitate such a wig as taught by Kim with a transparent front mesh as demonstrated by Lee, Becker would require that the central mesh portion be modified to be transparent in order to blend in and appear like a natural scalp/hairline of the wearer *and also extend unimpeded (such as by bands 18 and 20 as provided by Becker) from the frontal periphery to the rearward periphery of the wig grip with the rearward portion of such mesh* element being of narrower width than the frontal hairline portion in order to accommodate a central part on a user's scalp (see annotated FIGS. 5-6 of Kim below depicting the outline of the wig grip band in red on the hair parting line of the Kim wig):



FIG. 5

In this context, the examiner and NGI's counsel had a first interview on July 21, 2020. NGI's counsel suggested claim language extending the mesh "to the forward edge of the wig grip apparatus" as a basis for patentability while also noting that one of the two prior art methods for achieving transparency in a wig is with a transparent foundation. Both the Walsh and Becker references were specifically mentioned. As reflected in the Interview Summary (Exh. 4 at NGI00041-43):

> Attorney briefed Examiner about general state of the art and how instant invention is asserted to be distinguished from prior art. The purpose of a wig grip band is [to] create friction and the mesh used in wig is

relatively slippery on the head such that modifications of wig grip bands would detract from their purpose of frictional engagement. Additionally, *the forward position of the wig grip is where frictional engagement is needed the most. In the prior art, the two primary ways of making the front of the wig transparent is by replacing a wig grip with a transparent wig foundation or providing wig grips with color to match skin tone.* Attorney also noted secondary considerations of counterfeits in the market.

Attorney noted Walsh and Becker as applied to independent claims and discussed the extension of the middle mesh section of the instant invention to the forward edge of the wig grip apparatus as a distinguishing feature.

Apparently having second thoughts about the proffered amendment, NGI's responsive amendment did not include such limitations. Instead, NGI filed claim amendments calling for "non-transparency beyond the forward periphery" of the mesh with no termination location of the mesh relative to the apparatus. (Exh. 4 at NGI00029.)[1]

Counsel and the examiner then held a second interview on November 12, 2020 (Exh. 4 at NGI00016-17). At that interview, the examiner refused to accept the proffered amendment because she considered the language "beyond the forward periphery" to be unclear under Section 112.

NGI and the examiner did agree, however, that language calling for "the wig grip apparatus terminates at the forward periphery" would be acceptable.

---

[1] This is the same language and scope Plaintiff now asserts should apply under the doctrine of equivalents. The examiner, however, expressly rejected this construction during prosecution, and NGI did not appeal that determination. This has consequences. *See Festo Corp. v. Shoketsu Kinzoku Kogyokabushiki Co.*, 535 U.S. 722, 734 (2002) ("While the patentee has the right to appeal, his decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim. Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent.") (citations omitted).

They expressly agreed in the Interview Summary that this language would "overcome the 112 rejection and to overcome the prior art of record and put the application in condition for allowance." The record shows that it was not just Walsh that was overcome. The amendment would also overcome the rejections based on Walsh and Becker which, as noted above, disclosed bands that did "not extend to the forward and rearward peripheries of the wig grip band."

Defendants also note that the final amendment would also align with the representations made at that 1st interview, quoted above and found at Exh. 4 at NGI00041-43, that frictional engagement "at the forward periphery of the wig band" was important for operation of the wig band.[2]

Plaintiff does not square its arguments for tangentiality with the entirety of the prosecution record, including the Section 103 and 112 rejections. This record shows that the edge location of the mesh was very much an issue in the prosecution and distinguished from the prior art based on the final, agreed amendments.

The arguments for tangentiality also do not square with the very limited disclosure in the '159 and '477 disclosures of where the mesh might terminate. Actually, the only disclosure of a termination position for the mesh element is found in the drawings. There is no corresponding textual description in either patent. This limits the permissible scope of claims in a patent. *See Festo Corp. v. Shoketsu Kinzoku Kogyokabushiki Co.*, 535 U.S. 722, 736 (2002) ("What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue. The patent also should not issue if the other requirements of § 112 are not satisfied, and an applicant's failure

---

[2] The Accused Product has a strip of silicone embedded into the velour on one side of the band. This silicone provides "greater grip to the head" (ECF 69-6 Gibson Decln. at p. 92) and would make up for any lost friction due to the relatively small, recessed, silk segment that cannot provide friction at the edges of the band.

to meet these requirements could lead to the issued patent being held invalid in later litigation.")

The termination location of the mesh element was a central issue in the examination and in the decision to allow the final claims containing the added limitation that "the wig grip apparatus terminates at the forward periphery [of the mesh]." Plaintiff did not carry its burden to show that this limitation was "tangential" so as to avoid the presumptive prosecution history estoppel. *See Festo Corp. v. Shoketsu Kinzoku Kogyokabushiki Co.*, 535 U.S. 722, 740 (2002) ("Just as *Warner-Jenkinson* held that the patentee bears the burden of proving that an amendment was not made for a reason that would give rise to estoppel, we hold here that the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question."). The estoppel applies and precludes infringement of the Accused Device as an equivalent.

**B.     Even if the Doctrine of Equivalents Could Apply,
the Accused Product Operates in a Different "Way"**

It is undisputed that function of the limitation at issue in this case, "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus," is to make sure that nothing is visible at that forward edge of the hair parting line.

However, where the patent does this by using a very thin semi-translucent lace mesh at the front edge of the band, the *way* the accused product hides its presence is demonstrably different: it simply has nothing at the front edge of the wig band. As the Declaration of Amy Gibson (ECF 69-6) makes clear, the inset silk is not visible at all by persons who are standing close to the wearer because it simply does not exist at the most forward portion of the wig band.

Stated another way, both of the adjacent side bands are longer than the silk and extend beyond the front and rear (or top and bottom edges) of the silk in the accused CRYSTAL wig band:

This position has nothing visible at the terminal edge of the band to be seen at the parting line. I found that the band had to have a centered, double recessed position between the velour bands to ensure that the silk could not be seen through the parting line of a lace wig by persons who might be standing close by or by a camera that might zoom in for a tight head shot. **Having nothing at the edge of the parting line leaves nothing to be hidden from view.**

(Dkt. No. 69-6, Exhibit 5, Declaration of Amy Gibson ("Gibson Decl.") ¶¶ 10-11) (emphasis added). *See also* ECF 72-20, in the video starting at 1:10 in CHD00739 where Ms. Gibson talked about receding the edges to allow your own scalp to show. This video was made before this case was begun so it is not a litigation-made assertion.

Having physically nothing at the most forward portion of the band is a substantially different "way" of obscuring the fact that the user is wearing a wig grip band than simply having that portion of the band concealed by a thin semi-translucent strip of mesh/fabric. (*See* CHD Brief ECF 69-1 at 6-7.)

Nor is this an "insubstantial difference." Not existing at all is significantly different from what is claimed by the Asserted Patents. *See Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1366-67 (Fed. Cir. 2020) ("Saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." (citing *Brilliant Instruments, Inc. v. GuideTech, LLC* , 707 F.3d 1342, 1347 (Fed. Cir. 2013)).

C. **Plaintiff's Proposed Doctrine of Equivalents Reads Out an Essential Element of the Claim Term at Issue**

Plaintiff's proposed doctrine of equivalents would convert the term from the "the *wig grip apparatus* terminates at the forward periphery" to "the *mesh element* terminates at the forward periphery" and thereby rewrite the Court's claim construction. (Its Motion for Reconsideration of Order Regarding Claim

Construction to achieve this same result was denied in ECF 66.) This is improper. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) ("But the doctrine of equivalents cannot be used to effectively read out a claim limitation").

This Court should not allow the Plaintiff to engage in such wholesale revision of the claim language. *See Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994) ("The doctrine of equivalents cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.").

### D. The Accused Product is Plainly Dissimilar to the '892 Design

This Court need not resolve any disputed issues of fact in determining whether the accused and patented designs are sufficiently distinct and plainly dissimilar to determine whether the Plaintiff can carry its burden to prove infringement as a matter of law. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (*See* ECF 69-1 CHD Motion at 7). *See also Oddzon Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401 (Fed. Cir. 1997) ("Thus, summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party." (citing *Anderson v. Liberty Lobby, Inc.*, U.S. 242, 248 (1986)).

Infringement of a design patent uses the same standard as anticipation under Section 102. *See Egyptian Goddess v. Swisa*, 543 F.3d 665, 678 (Fed. Cir. 2008).

Plaintiff finds fault with the lack of an extensive discussion of the ordinary observer. (NGI Brief at 19-20.) There was no need: the ordinary observer is defined as a matter of law. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015) ("The Supreme Court explained in *Gorham* that the ordinary observer is not an expert in the claimed designs, but one of ordinary acuteness who is a principal purchaser of the underlying articles with the claimed designs.") It is undisputed that the present wig bands are directed at wig users who

1 want the wig not to slip in use. Such users are ordinary consumers of hair accessories (ECF 74-2 #66) with a need for greater grip on their wig. (Stmt. Uncontroverted Fact #2, ECF 74-1 Preamble of '159 claim 1.)

Plaintiff also argues that the appearance of only one side of the wig band avoids the "plainly dissimilar" standard (ECF 74 NGI Brief at 20) and discounts the design importance of the silicone strip on the other side of the accused product as well as the other perceptible differences (NGI Brief at 22). Similarity is determined, however, by reviewing all sides of the accused product to determine whether the overall design has sufficient similarity to resist a motion for directed verdict. (*See* CHD Brief at 9.) The Accused Product is also reversible for those users who want greater grip on the wig. (*See* ECF 69-6 Gibson Decln. at ¶6.) This reversibility feature and its appearance are almost certainly of interest to a typical buyer.

Plaintiff seeks to discount the design impact of the silicone strip with arguments that its functions allow its appearance to be discounted (NGI Brief at 24). The design impact of elements having a functional effect should, however, be considered. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) ("[T]he district court meticulously acknowledged the ornamental aspects of each functional element. . . In light of our precedent regarding claim construction for design patents, we see no error in the approach taken by the district court to construe the claims commensurate with the statutory protection afforded to an ornamental design.")

Plaintiff also criticizes Defendants' identification of specific differences (NGI Brief at 20) while failing to note that Defendants acknowledge that it is the designs as a whole that must be compared (CHD Brief at 7). Defendants' method is, however, fully consistent with the Federal Circuit's guidance in *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) ("Because a claimed design is better represented by an illustration rather

than a description, we have instructed that, unlike utility patents, "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess*, 543 F.3d at 679. We have explained, however, that there are a number of claim scope issues which may benefit from verbal or written guidance, among them the distinction between features of the claimed design that are ornamental and those that are purely functional. *Id.* at 680.")

Plaintiff also asserts that design patents also benefit from the doctrine of equivalents. (NGI Brief at 19.) Plaintiff provides no further citation as to the applicable scope of such equivalents.

The proper scope is, however, "colorable imitation." *See Egyptian Goddess v. Swisa*, 543 F.3d 665, 678 (Fed. Cir. 2008) ("[I]n accordance with *Gorham* and subsequent decisions, we hold that the ordinary observer test should be the sole test for determining whether a design patent has been infringed. Under that test, as this court has sometimes described it, infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof.")

### III. CONCLUSION

Accordingly, summary judgment of non-infringement of all Asserted Patents is warranted.

Respectfully submitted,
LEWIS ROCA ROTHGERBER CHRISTIE LLP

Dated: March 10, 2023

/s/Drew Wilson
Drew Wilson

JOHNSON LEGAL PLLC
Lance G. Johnson

Attorneys for Defendants
CREATEDHAIR DESIGNS, LLC and
CREATED HAIR, INC.