UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV21-08086 JAK (RAOx) | | Date | June 27, 2023 |
|---|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER REGARDING SUMMARY JUDGMENT MOTIONS (DKTS. 69, 72)**

### I.  Introduction

NG Imports, Inc. brought this action against CreatedHair Designs, LLC and CreateHair, Inc. (collectively, "CreatedHair" or "Defendants"), alleging that they infringe, U.S. Patent Nos. 10,881,159 (the "'159 Patent") and 10,945,477 (the "'477 Patent") for a "Wig Grip Apparatus," and D879,382 (the "D382 Patent") for the ornamental design of a "Wig Grip." Dkt. 1 at 4–6. The parties filed cross-motions for summary judgment. Based on a review of the filings, it was determined that the issues presented are appropriate for decision without oral argument, the hearing was taken off the March 27, 2023 calendar, and the matter was taken under submission. *See* Fed. R. Civ. P. 78; Local Rule 7-15.

For the reasons stated in this Order, the cross-motions are resolved as follows:

| Motion | Opposition | Reply | Ruling |
|---|---|---|---|
| Defendants' Motion for Summary Judgment of Non-Infringement (Dkt. 69) | Dkt. 74 | Dkt. 76 | GRANTED as to utility patents; DENIED as to design patent |
| Plaintiff's Motion for Partial Summary Judgment of Infringement of the Utility Patents (Dkts. 72, 73) | Dkt. 75 | Dkt. 79 | DENIED |

The related evidentiary objections are also addressed in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086 JAK (RAOx) | | Date | June 22, 2023 |
|---|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | | |

**II.    Background**

      A.    Patents-in-Suit

           1.    The Utility Patents

The '159 Patent, which issued on January 5, 2021, is titled "Wig Grip Apparatus." Dkt. 35-1. It claims priority to U.S. Patent App. No. 16/819,024, which was filed on March 13, 2020, and published as U.S. Patent App. Pub. No. 2020/0214379. Plaintiff is the assignee of the '159 Patent.

The '477 Patent, which issued on March 16, 2021, is also titled "Wig Grip Apparatus." Dkt. 35-2. It claims priority to U.S. Patent App. No. 16/276,579, which was filed on February 14, 2019, and published as U.S. Patent App. Pub. No. 2020/0015532. Plaintiff is the assignee of the '477 Patent.

The '159 Patent and the '477 Patent (the "asserted utility patents") are related under 35 U.S.C. §120 because the '159 Patent is a divisional patent of the '477 Patent. Dkt. 35 at 3. The asserted utility patents relate to "devices for facilitating the stable attachment of wigs to the head of a wearer" and are directed to "embodiments of a wig grip apparatus." '159 Patent at 1:6–8; 2:13–16. The claims of the '159 Patent are directed to the wig band itself, and the claims of the '477 Patent are directed to a method of using the wig band to hold a wig on the head of a user. Dkt. 35 at 3.

According to the specification, the wig grip apparatus comprises at least a first securement member, a second securement member, and a transparent mesh element. '159 Patent at 2:16–19; 2:31–33. Specifically, the first and second securement member each may be comprised of a flexible fabric, have an outboard portion and an inboard portion, and have varying length. *Id*. at 2:20–30. The transparent mesh element may be affixed to the first and second inboard portion. *Id*. at 2:31–43. The securement members may each include a forward edge and an opposing rearward edge. *Id*. at 2:63–65. The mesh element may include a frontal segment having a forward periphery, which may preferably be in alignment with the forward edges. *Id*. at 2:65–3:1. For example, Figure 1 depicts a "diagrammatic bottom plan view of the one example wig grip apparatus in accordance with the present disclosure:"



*See id.*, Fig. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

During the claim construction proceedings in this action, the parties disputed the meaning of claim limitation "the wig grip apparatus terminates at the forward periphery." For illustrative purposes, the limitation is shown as it appears in Claim 1 of the '159 Patent:

> 1. A wig grip apparatus for facilitating enhanced securement of a wig to the head of a wearer, the wig grip apparatus comprising:
> a first securement member comprised of velvet or velour and having a first outboard portion and a first inboard portion disposed oppositely of one another;
> a second securement member comprised of velvet or velour and having a second outboard portion and a second inboard portion disposed oppositely of one another ; and;
> a mesh element being transparent and affixed between the first inboard portion and the second inboard portion;
> wherein the first outboard portion and second outboard portion are configured to be placed into releasable gripping engagement with one another, and
> wherein
> (a) the first securement member, the second securement member and the mesh element collectively form a band configured to encircle a head of a wearer when the first outboard portion and second outboard portion are in said releasable gripping engagement with one another;
> (b) the mesh element includes a forward periphery extending from the first inboard portion to the second inboard portion; and
> (c) ***the wig grip apparatus terminates at the forward periphery***.

'159 Patent, Claim 1 (emphasis added to show disputed claim limitation); *see also id.*, Claim 20 (including a similar wherein clause, "wherein . . . the wig grip apparatus terminates at the forward periphery"); *see also* '477 Patent, Claim 1 ("A method of using a wig grip apparatus . . . the method comprising . . . a mesh element . . . wherein the mesh element includes a forward periphery and the wig grip apparatus terminates at the forward periphery").

The Order Regarding Claim Construction ruled that "the wig grip apparatus terminates at the forward periphery" "should be understood by its plain and ordinary meaning." Dkt. 55 at 8. "According to the plain language of the claims, 'the forward periphery' means the forward periphery of the mesh element." *Id.* Therefore, "the plain and ordinary meaning of 'the wig grip apparatus terminates at the forward periphery' is the forward periphery of the mesh element is the most forward portion of the wig grip apparatus." *Id.* This construction is supported by the claim language, the specification, and the prosecution history. *Id.* at 8-12.

> 2. The Design Patent

The D382 Patent claims an ornamental design for a wig grip as shown and described in ten drawings, two of which are as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |



*See* D382 Patent, Figs. 1, 9.

Defendants seek summary judgment of non-infringement of all three patents. Plaintiff seeks summary judgment of infringement of the asserted utility patents.

**III.      Analysis**

    A.      Legal Standards

Summary judgment is appropriate when, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In considering a motion for summary judgment, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," such as those necessary to the proof of a defense or a claim, and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). "Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

The moving party bears the initial burden of identifying the portions of the pleadings, discovery, and other evidence that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks omitted). If the non-moving party fails to produce evidence sufficient to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322–23. Mere allegations or denials do not defeat a moving party's allegations. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 959–60 (9th Cir. 1994). The nonmoving party cannot defeat a motion for summary judgment simply by proffering a conclusory opinion from an expert. *See, e.g.*, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact to defeat summary judgment."); *Arthur A Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1047–48 (Fed. Cir. 2000). "[S]ummary judgment is generally disfavored in the trademark arena." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).

    B.    Defendants' Motion

        1.    The Positions of the Parties as to Utility Patent Infringement

During prosecution, to overcome a multi-pronged rejection from the Examiner, the applicant amended the claims to include "the wig grip apparatus terminates at the forward periphery." As stated, the Order Regarding Claim Construction construed the plain and ordinary meaning of "the wig grip apparatus terminates at the forward periphery" as "the forward periphery of the mesh element is the most forward portion of the wig grip apparatus." Dkt. 55 at 8. Applying this construction, the parties agree there is no literal infringement. Dkt. 69-1 at 1-2. This is because the forward periphery of the mesh element of the accused product is not "the most forward portion" of the device on either side of the band; the mesh element stops short of the edges of the apparatus.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

The parties dispute whether the accused product nonetheless infringes under the doctrine of equivalents. Defendants argue that "prosecution history estoppel applies so as to prevent consideration of infringement and the doctrine of equivalents." *Id.* at 4. In support of this position, Defendants argue that the amendment of "the wig grip apparatus terminates at the forward periphery" was entered "to overcome the examiner's objections under the prior art." *Id.* at 5 (citing 35 U.S.C. § 102, 103, 112). Defendants observe that the Examiner "relied on the added 'termination' limitation in her Statement of Reasons for Allowance as a basis for her actions." *Id.* at 6 (citing Dkt. 55 at 11). Thus, Defendants argue that the "most forward" limitation was narrowing and cannot be met by an alleged equivalent. *Id.* Even if prosecution history estoppel did not apply and an equivalents analysis were conducted, Defendants argue that the accused product "has nothing at the 'most forward portion of the wig grip apparatus' that performs the same function in the same way to provide the same result." *Id.* at 7.

Plaintiff responds that there is a rebuttable presumption that the amendment bars arguing for equivalents. However, Plaintiff has sought to rebut that presumption by showing that the inventor added "the wig grip apparatus terminates at the forward periphery" to clarify the applicant's prior proposed amendment of "the wig grip apparatus lacks non-transparency beyond the forward periphery." Dkt. 74 at 2-3. Plaintiff argues that the prosecution history shows the applicant's "objectively apparent reason for the narrowing amendment bears no more than a tangential relation to" the proposed equivalent with receded mesh, which is a feature "that was not addressed by the primary prior art reference (Walsh)" or the amendment. *Id.* at 4. Because the Walsh reference, a mesh face mask, has opaque cording around its perimeter, Plaintiff argues the amendment was intended to show that the claimed wig grip band had no opaque features beyond the mesh. *Id.* at 4-5 (the applicant wanted to "specify[] that no non-transparent cording (or other opaque structure of the apparatus) appears directly in front of the entire forward periphery of the mesh element"), as shown below.



Rather than convey this by using the applicant's proposed language ("the wig grip apparatus lacks non-transparency beyond the forward periphery"), the Examiner found it clearer to say, "the wig grip apparatus terminates at the forward periphery [of the mesh element]." *Id.* at 5. Thus, Plaintiff argues that nothing in the file history should be treated as surrendering claim scope as to the relative width of the mesh. *Id.* at 6. Rather, Plaintiff concludes that the applicant "only surrendered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

equivalents relating to cording or other opaque structures appearing in front of the entire forward periphery of the mesh (ala Walsh), not devices comprising a mesh element where the forward periphery is receded relative to the forward edges of the securement members," as in the accused product. *Id.* at 7-8. Having rebutted the presumption concerning surrender, Plaintiff argues that the mesh in the accused product with a receded forward periphery infringes under the doctrine of equivalents because it performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Id.* at 11.

In reply, Defendants argue that Plaintiff ignores that the amendment was adopted not only to overcome the Examiner's rejection on § 102 grounds (anticipation), but also was based on § 103 (obviousness) and § 112 (indefiniteness). Dkt. 76 at 1. Defendants argue that this shows the amendment as to the "mesh location limitation became the basis for patentability and show[s] why the claims required that transparent mesh be located at the most forward portion of the wig band." *Id.* Thus, Defendants conclude the amendment was not "tangential" to patentability, and Plaintiffs have failed to overcome the presumption that the amendment surrendered the proposed equivalent. *Id.* at 1-2.

    2.    Analysis

"A claim of infringement under the doctrine of equivalents may be decided on summary judgment." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). This is especially true in the context of analyzing prosecution history estoppel. This is because "[w]hether prosecution history estoppel applies to bar a doctrine of equivalents claim is a question of law, reviewed de novo."[1] *Eli Lilly and Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019); *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1367-68 (Fed. Cir. 2003) ("*Festo III*") ("We have stated on numerous occasions that whether prosecution history estoppel applies, and hence whether the doctrine of equivalents may be available for a particular claim limitation, presents a question of law.").

As stated, to overcome a rejection during prosecution, the amendment "the wig grip apparatus terminates at the forward periphery" was added to the claims. This narrowing amendment gives rise to a rebuttable presumption that the applicant surrendered the ability to rely on the doctrine of equivalents for the added limitation. *Festo III*, at 1365. A patentee may rebut the presumption by showing that the reason for the amendment is no more than "tangential[ly] relat[ed]" to the equivalent in question. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002) ("*Festo II*"). Whether a patentee can rebut the *Festo* presumption as being tangentially related turns on the applicant's objectively apparent reason for the narrowing amendment. *CH2O*,

---

[1] Because this presents a question of law, that Plaintiff's expert offered a legal-conclusion opinion on this question cannot create a controverted issue of material fact. *See* Dkt. 74-4, Lunsford Decl., ¶ 44. Plaintiff largely concedes this. Dkt. 80 at 1:15-17. Defendants' evidentiary objections on this basis are **SUSTAINED**. *See* Dkt. 78, ¶¶ 43-44. Defendants' remaining objections as to the utility patent testimony are **MOOT**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

*Inc. v. Meras Eng'g, Inc.*, Case No. 13-cv-08418 JAK (GJSx), 2017 WL 11631638 *6 (C.D. Cal. July 13, 2017) (citing *Festo III*).

In view of the prosecution history, Plaintiff's argument that the amendment was intended only to show that the claimed wig grip band had no opaque features beyond the mesh is unpersuasive. The Examiner issued an Office Action rejecting all of the proposed claims for various reasons. As relevant here, the Examiner rejected the claims as being obvious under § 103 over Becker in view of Peterson. *See* Dkt. 69-5 at 64, ¶ 18. Becker also disclosed a wig grip apparatus where "the inboard portions are separated from one another by way of the mesh element." *Id.* ¶ 19. Notably, the mesh element in Becker "does not extend to the forward and rearward peripheries of the wig grip band to align with the edges of the securement members." *Id.* ¶¶ 30, 39, 43. As to certain claims, the Examiner also noted that "Kim teaches a wig base with a front hairline mesh section (125) where the central portion of the mesh extends unencumbered to the front hairline portion and then in a T-shape." *Id.* ¶ 43. Certain claims were also rejected as being anticipated under § 102 by Walsh, the mesh face mask with opaque cording around the perimeter. *Id.* ¶ 15-16.

In response to the Office Action, the applicant initiated an interview with the Examiner. *See id.* at 55. In the Continuation Sheet, the Examiner summarized the interview. According to the Examiner, the applicant's attorney "noted Walsh and Becker as applied to independent claims and **discussed the extension of the middle mesh section of the instant invention to the forward edge of the wig grip apparatus as a distinguishing feature**." *Id.* at 57 (emphasis added). The Examiner agreed that "details regarding not only the periphery front and rear edges of the mesh section," including "specifically the shape of the center mesh section," were "pertinent areas of detail to expand upon." *Id.*

Applying this guidance, the applicant submitted a reply to the non-final Office Action, including proposed claim amendments. *See id.* at 43. The applicant noted the Examiner recommended amending the claims to "clarify the key points of distinction" from the prior art, including by "possibly adding detail further clarifying the relationship between the transparent mesh element and the securement members." *Id.* at 49. Regarding the § 102 rejection, the applicant responded that, unlike the opaque cording in Walsh, the claimed invention had "non-transparent structures present beyond the peripheries of the mesh." *Id.* at 50. The applicant then explained that "[n]otably, including non-transparency beyond the forward periphery of the transparent mesh element would frustrate the purpose of the instant invention." *Id.* at 51. Regarding the § 103 rejection, the applicant stated that the present invention takes a different approach than prior art wig bands. *Id.* at 52. In "[r]espons[e] to the Examiner's comments during the" interview, the independent claims were "amended to clarify the distinction between the prior art and the instant invention," including by adding the limitation "the wig grip apparatus lacks nontransparency beyond the forward periphery [of the mesh element]." *Id.* at 52. The applicant argued these changes made the claims allowable. *Id.* at 53.

After receiving the reply, the Examiner initiated an interview with the applicant. *See id.* at 41. During the interview, the "Examiner suggested changing the language of 'the wig grip apparatus

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

lacks non-transparency beyond the forward periphery' since it was unclear as to what 'lacks non-transparency' is and it was also unclear as to what was considered 'beyond the forward periphery'." *Id.* at 42. Both the Examiner and applicant "agreed to change the limitation to state 'the wig grip apparatus terminates at the forward periphery' to overcome the 112 rejection and to overcome the prior art of record and put the application in condition for allowance." *Id.*

Following this amendment, in a Notice of Allowance, the Examiner found that "Walsh does not disclose the mesh element including a forward periphery **and that the forward periphery of the mesh terminates the apparatus**." *Id.* at 39; *see also id.* at 38 (noting that no prior art reference or reasonable combination thereof included, inter alia, "the wig grip apparatus terminates at the forward periphery" of the mesh element).

The prosecution history demonstrates that the applicant added the "the wig grip apparatus terminates at the forward periphery" to overcome § 102 and § 103 rejections based on the prior art. The Examiner's proposed language was adopted in lieu of the applicant's proposed "nontransparency" language to avoid a rejection under § 112. Although overcoming the opaque cord that terminated the mesh face mask in Walsh was one reason for the amendment, it was also needed to overcome Becker. The applicant discussed "exten[ding] [] the middle mesh section of the instant invention to the forward edge of the wig grip apparatus as a distinguishing feature," *id.* at 57, and did so through the amendment. The Examiner then allowed the claims based, in part, on the amendment, noting one distinguishing feature from the prior art is "the forward periphery of the mesh terminates the apparatus." *See id.* at 38-39.

Because the claims were narrowed by amendment for a "substantial reason related to patentability," *i.e.*, to avoid a prior art rejection, Plaintiff may not assert the surrendered subject matter as an equivalent. *See Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1573 (Fed. Cir. 1997). Where "the prosecution record clearly shows that the reason behind the addition" of the disputed limitation "was to overcome prior art, prosecution history estoppel conclusively applies. *Bai*, 160 F.3d at 1355; *see also Festo III*, 344 F.3d at 1369 ("Although we cannot anticipate the instances of mere tangentialness that may arise, we can say that an amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim.").

Finally, Plaintiff's suggestion that this question turns on "the mesh element terminat[ing] at the forward periphery" is incorrect where the relevant independent claim language states the "wig grip apparatus terminates at the forward periphery." This is not only because the Examiner made this distinction clear in the Notice of Allowance, but also because dependent Claim 5 discloses the mesh element (as opposed to the apparatus) terminating at the forward edges of the securement members. The presence of this variation in a dependent claim further supports the importance of this distinction. *See Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) ("[T]he doctrine of equivalents cannot be used to effectively read out a claim limitation").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

Accordingly, because prosecution history estoppel bars Plaintiff's doctrine of equivalents argument, and because Plaintiff concedes there is no literal infringement, Defendants' motion for summary judgment of non-infringement as to the asserted utility patents is **GRANTED**.

        3.        The Position of the Parties as to Design Patent Infringement

Defendants seek summary judgment of non-infringement as to the design patent on the basis that their accused product is "plainly dissimilar" from the patented design. Dkt. 69-1 at 7. Defendants acknowledge that the whole design must be considered, but argue that "certain features" of the accused product "are prominently different from the '382 design and stand out even with casual observation." *Id.* (raising six proposed points of distinction). For example, Defendants compare the front view of the claimed design and the accused product to argue the two are plainly dissimilar.



*Id.* at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
|---|---|---|---|
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

Defendants also argue that, considering the prior art, the accused product is "more different from the '382 design than is the prior art." *Id.* at 11.

Plaintiff responds that Defendants have not provided any evidence "that any of the alleged differences between the Accused Design and the claimed design would be noted, let alone have any influence on, the 'eye of the ordinary observer.'" Dkt. 74 at 19-20. Plaintiff criticizes the declarations submitted by Defendants' expert, Bobbi Russell, and Defendants' principal, Amy Gibson, for failing to apply the ordinary observer test. *Id.* at 20. Plaintiff rejects the approach of "list[ing] out trivial differences in isolation." *Id.* By comparing Figure 1 with the accused product, Plaintiff argues the overall design is not plainly dissimilar to the ordinary observer. *Id.*



Plaintiff next argues that "[t]he fact that the Accused Design is substantially the same in overall appearance to claimed design becomes especially evident when comparing the two designs with the prior art." *Id.* at 21. Plaintiff contends that, because the accused product "is essentially monochrome (as it is meant to be hidden by matching the skin tone of the wearer) and has a very shiny velour appearance, most of the alleged minor differences (*e.g.*, stitching details) listed by Defendants would be obscured from notice by the ordinary observer." *Id.* at 22; *see also id.* at 22-24 (addressing each of the purported differences).

    4.    Analysis

To determine design patent infringement, the claim must first be construed. However, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). At the infringement step of the analysis, the "ordinary observer test" is "the sole test for determining whether a design patent has been infringed." *Id.* at 678. Under that test, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* at 670 (internal quotation marks omitted).

In applying these standards, "infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof." *Id.* at 678 (internal quotation marks and alteration omitted). If two designs are "plainly dissimilar," the patentee cannot meet its burden. *Id.* Conversely, if two designs "are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.* "Where there are many examples of similar prior art designs," then "differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Id.*

Design patent infringement is a question of fact "unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Enerlites, Inc. v. Century Prod. Inc.*, No. SA-CV-18:839-JVS-KESx, 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018). Determining "[w]hich features would be significant to the ordinary observer is a question of fact." *Dioptics Med. Prod., Inc. v. IdeaVillage Prod. Corp.*, No. CV 08-03538 PVT, 2010 WL 4393876, at *2 (N.D. Cal. Oct. 29, 2010) (citing *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1241-42 (Fed. Cir. 2009)).

The competing wig grip designs share similarities, but viewing the evidence in the light most favorable to the non-moving party, a question of fact remains in applying the ordinary observer test. Specifically, reasonable factfinders could differ regarding whether an ordinary observer would find that the distinguishing features, including, *e.g.*, differences in the size/placement of the mesh element, the appearance of the anti-stretch stitching, the edge and connection finishes, the appearance of the backside of the device, and the impact of the label, make the overall design of the accused product distinguishable from the claimed design. Each party presents countervailing fact testimony concerning these differences and whether an ordinary observer would find the claimed design and the accused design substantially similar. *Compare* Dkt. 74-4, Lunsford Decl., ¶¶ 59, 67-76 *with* Dkt. 69-6, Ex. 4 (Gibson Decl.), *and* Ex. 6 (Russel Decl.).[2] These factual disputes cannot be resolved on summary judgment. Considering the competing factual testimony, the devices are not so dissimilar to warrant summary judgment of non-infringement.

---

[2] To the extent any expert offers a legal conclusion on this question, it is disregarded. *Amini Innovation Corp. v. Anthony California Inc.*, No. CV 03-8749, 2006 WL 6855371, at *10 (C.D. Cal. Sept. 21, 2006) (portions of expert report offering legal conclusions "invade the role of the jury (specifically, the 'ordinary observer' test)"). Further, Plaintiff's timely foundational objections to the Russell Declaration (Dkt. 74-24) are **OVERRULED** for failing to comply with the Standing Order's requirements for evidentiary objections. *See* Dkt. 11. Plaintiff's untimely foundational objections are disregarded. Dkt. 81. Unless otherwise stated herein, Defendants' remaining objections to the design patent testimony are **MOOT**. *See* Dkt. 78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV21-08086 JAK (RAOx) | Date | June 22, 2023 |
| Title | NG Imports, Inc. v. Createdhair Designs, LLC et al. | | |

Accordingly, Defendant's motion is **DENIED** as to design patent infringement.

    C.    Plaintiff's Motion

        1.    The Position of the Parties as to Utility Patent Infringement

Plaintiff seeks summary judgment of infringement of the asserted utility patents. The parties take the same positions as stated with respect to Defendants' motion for summary judgment of non-infringement. Thus, whether the prosecution history estoppel bars Plaintiff's reliance on the doctrine of equivalents to prove infringement, *i.e.*, whether Plaintiff may allege that the receded mesh element in the accused product is an infringing equivalent. *See* Dkts. 72-1, 73, 75, 79.

        2.    Analysis

For the reasons stated with respect to Defendants' motion for summary judgment of non-infringement, Plaintiff may not raise infringement under the doctrine of equivalents based on the narrowing amendment "the wig grip apparatus terminates at the forward periphery" of the mesh element. Accordingly, because Plaintiff concedes that there is no literal infringement, Plaintiff's motion for summary judgment of utility patent infringement is **DENIED**.

**IV.** <u>**Conclusion**</u>

For the reasons stated in this Order, Defendants' motion for summary judgment of non-infringement is **GRANTED** as to the asserted utility patents and **DENIED** as to the design patent. Plaintiff's motion for partial summary judgment of infringement as to the asserted utility patents is **DENIED**.

**IT IS SO ORDERED.**

                                                                                                                  :

Initials of Preparer    tj